**Chester GODDARD**

v.

**SHAPIRO BROS. SHOE CO., Inc. and Maine Employment Security Commission.**

Supreme Judicial Court of Maine.

Oct. 20, 1967.

G. Curtis Webber, Auburn, for appellant.

Irving Isaacson, Lewiston, Frank A. Farrington, Asst. Atty. Gen., Augusta, for appellees.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN and DUFRESNE, JJ.

MARDEN, Justice.

On cross appeals.

Plaintiff, hereinafter described as claimant, an employee in the shoe industry, during a period of partial unemployment on August 27, 1965 filed for unemployment benefits. A representative of the Maine Employment Security Commission (Commission) by

decision of August 30, 1965 determined that claimant's weekly benefit amount was $34.00 and maximum benefit amount was $884.00. This finding, in the language of the Commission, is known as the "monetary determination" and fixes the maximum limits to which weekly and total benefits to a claimant are available.

Subsequent to the montary determination claimant filed for benefits for 6 weeks, the last 5 of which, the first being a waiting period, give rise to the present controversy. The claims for 4 of the 5 weeks disclose some wages received from the employer and in one week an earning of $4.60, and in each of the other three weeks earnings of $4.66 received as shop steward for his Union.

The Maine Employment Security Law (Act) appears in 26 M.R.S.A. § 1041 through § 1251, and sections hereinafter cited refer to the Act.

At the time the claims were filed, the Act provided (section 1191, subsection 3) that in cases of partial employment, earnings from regular employment should be deducted in full from the weekly benefit amount to which the claimant was entitled, but if he had received earnings from employment other than where regularly employed, only that amount of such earnings which exceeded $10.00 should be deducted from such weekly benefit amount.[1]

Under section 1194, subsection 2, it was the duty of the deputy who accepted claimant's first claim, under which the monetary determination was made, to promptly examine all subsequent claims filed and, on the basis of the facts found by him, determine the validity of the claim, the weekly benefit payment to be awarded, and promptly notify the claimant and any other interested party of the determinations and reasons therefor.

By Commission Regulation 1, subsection III, "interested party" is defined to mean the claimant, the last employing unit and/or the most recent employer chargeable with the compensation.

For reasons pertinent to a later discussion in the opinion, it is here pointed out that interested parties must file their appeals within 7 calendar days after such notice is mailed or the determination becomes final.

The person processing claimant's weekly applications ruled that his earnings as a shop steward were "odd job" earnings (earnings other than where regularly employed) and such being less than $10.00 were not deducted from the weekly benefit allowed.

While the Act provided that these weekly claims should be passed upon by a deputy, it appeared that due to the large numbers of such claims, administrative expediency did not provide, in all instances, for consideration by a deputy and that claims which appeared to be routine in nature were consolidated and certified to the Commission for payment by a deputy on a document known as the "manifest." Claimant's benefit allowances for the weeks in question were so processed and paid. No notices of the decisions upon claimant's weekly requests for partial unemployment benefits were mailed to interested parties.

The same section (section 1194, subsection 2) after fixing the appeal period, provides:

"If new evidence or pertinent facts that would alter such determination become known to the deputy prior to the date such determination becomes final, a redetermination is authorized, but such redetermination must be mailed before the original determination becomes final."

---

1. By Chapter 381 P. & S.L.1965, the difference between earnings from regular employment and earnings from other than regular employment was removed

and deductions from weekly benefit amounts are made only with respect to earnings in excess of $10.00 plus any fraction of a dollar.

The last claim was for the week ending October 3, 1965, was filed on October 8, 1965 and received by the appropriate commission office on October 11, 1965.

At some time during the period in which claimant was filing weekly claims for benefits, a deputy of the Commission, in reviewing the benefits granted claimant, made a redetermination of his claims for the reference weeks, and by decision mailed to interested parties on October 22, 1965 (at least 11 days after the most recently filed claim) held that claimant's earnings as shop steward should have been considered as regular employment earnings, and that appropriate deduction should have been made from the weekly benefit amounts allowed. This determination resulted in a finding that overpayment had been made to claimant, and that reimbursement by him was required.

From this decision, claimant appealed, challenging the deputy's classification of the earnings from services as shop steward, and the authority of the deputy to make such redetermination.

The appeal tribunal, after hearing, accepted without comment the deputy's ruling upon the earnings as shop steward (deductible), but held that the deputy had no authority to redetermine the weekly benefit payments which had been made. This decision removed the "over-payment" order.

The basis of the appeal tribunal's conclusion is recited in terms not of section 1194, subsection 2, quoted above, but in terms of section 1194, subsection 10, which prescribes the conditions under which the *Commission* may make a redetermination.

"The commission may reconsider a benefit payment for any particular week or weeks whenever it finds that an error in computation or identity has occurred in connection therewith or that earnings were erroneously reported, but no such redetermination may be made after one year from the date of payment for such week or weeks."

The Commission, upon its own motion, reviewed the decision of the appeal tribunal and by decision dated January 21, 1966, (approximately 3 months after the most recently filed claim) held that the earnings from services as shop steward were earnings from regular employment, hence deductible; that the deputy did have authority to make a redetermination, and that it (Commission) was empowered to review under provisions of subsection 10, above, the amounts of the benefits paid. This decision restored the "overpayment" order.

On appeal by claimant to the Superior Court, it was held that the shop steward earnings were earnings from regular employment (deductible) and that the Commission had no authority to make a redetermination. To this decision the Commission appealed upon the issue of "redetermination" and the claimant appealed upon the issue of the shop steward pay being held as earnings from regular employment (deductible).

Upon first consideration it must appear that decision upon one alternative in either of the issues makes the other moot. The record of the hearing before the appeal tribunal discloses, however, that claimant's case is representative of a number of cases pending, with which the associated facts are not before us. We shall consider both issues.

In what category do the shop steward earnings fall?

Section 1043, subsection 22, of the Act defines "Regular employment" as meaning:

"(W)ork at the individual's customary trade, occupation, profession or business as opposed to temporary or odd job employment outside of such customary trade, occupation, profession or business."

Section 1191, subsection 3:

*"Weekly benefit for partial unemployment. * * * (E)ach eligible individual*

who is partially unemployed and whose earnings from his regular employment in any week are less than his weekly benefit amount shall be paid with respect to such week a partial benefit equal to the difference between such earnings, * *, and his weekly benefit amount; except that an individual whose partial earnings are from emplyoment *other than where regularly employed* shall be paid an amount equal to his weekly benefit amount less that part of his earnings paid, * * *, for such week which is in excess of $10, * * *." (emphasis added)

It is uncontroverted in the record that a shop steward for the Union involved is elected in the department where the individual works, by the factory where he works, for a term of one year, which year "may be served out" or the services may be for a shorter period depending upon the conditions. The Commission urges that such service is regular employment and that within the meaning of the Act a person may well be regularly employed on two jobs at the same time.

Claimant urges that it is the intention of the Act to limit its definition of regular employment to one's primary occupation and that the work of shop steward falls into the "odd job" category such as extra work which an employee might take outside regular working hours.

The classification of the earnings as shop steward is determined by the statute.

The parties base the emphasis of their respective interpretations upon the statutory definition of regular employment (section 1043, subsection 22), quoted above, which distinguishes "odd job" employment as being employment *outside* of the employee's "customary trade, occupation, * * *, or business." (emphasis added) It may be, and was by implication, argued on the one hand, that the work as shop steward was not outside, was not beyond the limits of, the shoe operation which was claimant's customary trade or occupation, and therefore regular employment, and on the other hand, that such work was outside, beyond the limits of his customary trade or occupation.

■ The legislative intent in the use of the word "outside" in section 1043, subsection 22, is clarified in section 1191, subsection 3, quoted above, where, in prescribing weekly benefits, earnings "from employment other than *where* regularly employed," (emphasis added) is equated with odd job earnings, and receives special treatment. No applicable definition of the word "where," as an adverb, is found other than that meaning "at or in what place" or as a conjunction, other than that meaning "at or in which place." In transposition, "odd job" earnings are those from employment "other than at or in the place regularly employed." Claimant's services as shop steward were not outside his customary occupation, his earnings therefrom were from where regularly employed and were deductible from the weekly benefit amount otherwise payable.

What authority for redetermination? Both as applied to a deputy and the Commission acting as a panel, the statute prescribes the conditions under which redetermination of benefits may be made. Section 1194, subsection 2, provides that *the deputy, who is charged with making claimant's monetary determination, and examination of all subsequent claims filed by a claimant, may alter the determination previously made by him "[i]f new evidence or pertinent facts (which) would alter such determination"* become known to him prior to the date such determination becomes final, "but such redetermination must be mailed (to interested parties) before the original determination becomes final."

■ Commission urges that because the Commission representative, not identified as a deputy, but acting as a deputy, failed to notify interested parties of the determinations made with respect to the several weekly benefit payments in dispute, the appeal period did not begin to run and,

under the circumstances, such determinations did not become final. By this position the Commission seeks to take advantage of the failure of its representatives to comply with the statute. In a sense it would be appealing from its own decision. This is anomalous.

■ Additionally there was no "new evidence" or "pertinent facts" before the deputy which had not been before him, or the person serving in his place, at the time of the original determination. The deputy was not authorized to make a redetermination of claimant's weekly benefit payments. Assuming, contrary to the facts, that such attempt to redetermine had been made within 7 days from notice to interested parties, no facts justified it.

■ The authority of the Commission as a panel to reconsider the amount of a benefit payment is given in subsection 10, and while such reconsideration is permitted within one year from the date of payment, it may so reconsider "whenever it finds that an error in computation or identity has occurred in connection therewith or that earnings were erroneously reported". Claimant's earnings were not erroneously reported, there is no question of the identity of the claimant as being the person entitled to benefits, and the Commission must and does rely upon "an error in computation" as a basis for its reconsideration. Dictionaries agree that "computation" is the "act or process of computing; calculation, reckoning." No refinement of this definition is necessary. If, upon given facts, an error in arithmetic occurred of which, under usual circumstances, the claimant would be as aware as the Commission, it is only proper that such error be corrected. Failing to do so would, without justification, prejudice either claimant or the unemployment fund. Failure of the claimant to disclose an overpayment, or the Commission to disclose underpayment, under such circumstances, would be unconscionable and there is no injustice in requiring the party unjustly enriched to make restitution. An error in application of the law is not an error in computation as used in the statute. See Fisher v. Bethesda Discount Corp. (1960) 221 Md. 271, 157 A.2d 265, [6] 268.

Each appeal is denied. This leaves the claimant in a position of having been overpaid, but the Commission is without recourse.

Appeals denied.

WEBBER and WEATHERBEE, JJ., did not sit.