321 So.2d 216

**Cassie JEFFERSON**

**v.**

**MITCHELL SELECT FURNITURE CO., INC.**

**Bertha TIBBS**

**v.**

**MITCHELL SELECT FURNITURE CO., INC.**

**Civ. 589, Civ. 534.**

Court of Civil Appeals of Alabama.

Sept. 24, 1975.

Rehearings Denied Oct. 22, 1975.

Charles G. Spradling, Jr., and William P. Burgess, Jr., Huntsville, Legal Aid Society of Madison County, for appellants.

Joseph T. Conwell, Huntsville, for appellee.

Legal Aid Society of Birmingham, Inc. by Marvin H. Campbell, Director, Birmingham, William J. Baxley, Atty. Gen., Julian L. McPhillips, Jr., Asst. Atty. Gen., Lehman J. Lewis and Julian L. McPhillips, Jr., Montgomery, for Bureau of Loans, State Banking Dept., all in support of appellants.

Truman M. Hobbs and Howard C. Oliver, Montgomery, for Alabama Consumer Finance Assn., in support of appellee.

William B. Hairston, Jr., Birmingham, in support of appellee.

WRIGHT, Presiding Judge.

These are two cases consolidated on appeal. The plaintiff below was the same in each case. The pleadings and issues at

trial and on appeal are the same. The case specifically written to is that last appealed and orally argued by parties and amicus curiae. The decision following equally applies to each case.

Plaintiff filed suit for the unpaid balance owing after default by defendant on an instrument titled a Retail Installment Contract (Security Agreement). Defendant answered alleging violations by the plaintiff of provisions of the Alabama Consumer Credit Act of 1971 (Mini-Code) Title 5, Chapter 14, Code of Alabama (1940). Defendant further filed counter-claim for statutory damages charging violation by plaintiff of the Federal Truth-In-Lending Act, 15 U.S.C. Sec. 1601 et seq. and Federal Reserve Regulation Z, 12 C. F.R. Part 226.

The transaction out of which the suit arose involved the sale and purchase of consumer goods. It was a consumer credit sale under the provisions and definitions of the Mini-Code. The pleadings material to this appeal occurred immediately preliminary to trial. At that time plaintiff filed a combined motion to dismiss defendant's defense of violation of the Mini-Code and to grant summary judgment on defendant's counter-claim under Regulation Z. It is from the granting of that motion in each aspect that defendant appeals.

The questions presented to the trial court and to this court on appeal are whether the instrument involved as a matter of law violated the provisions of the Alabama Consumer Credit Act of 1971 (Mini-Code) and Federal Reserve Regulation Z, promulgated under authority of the Federal Truth-In-Lending Act. Related to the first issue are sections of the Uniform Commercial Code of Alabama, Act 549 of the Legislature (1965), Title 7A, *Code of Alabama (1940)* as recompiled 1958.

The issue involving the Mini-Code is one of first impression before appellate courts of this state. It is a matter of importance to creditors subject to the regulation under the Mini-Code and equally important to

consumers. This court therefore requested assistance from those interested on either side in the form of amicus curiae briefs. Such briefs have been filed by the following amici: Attorney General's Office, State of Alabama; Bureau of Loans, State Banking Department; Legal Aid Society of Birmingham, Inc.; Alabama Consumer Finance Association; Governor's Office of Consumer Protection, State of Alabama; Rev. Collias Stacy; Cumberland Capital Corporation; and The First National Bank of Birmingham. The court expresses its appreciation for their interest and assistance.

Defendant submits first that the court erred in dismissing her defense that the contract taken by plaintiff as evidence of the obligation of defendant was a negotiable instrument and in violation of the Alabama Consumer Credit Act of 1971 (Mini-Code) codified as Title 5, Chapter 14, *Code of Alabama (1940)*, as recompiled 1958, and that such violation required abatement of the suit.

Title 5, Sec. 319(a) is the first statute to be considered and appears as follows:

"In a consumer credit sale or consumer lease, the seller or lessor may not take a negotiable instrument other than a check as evidence of the obligation of the buyer or lessee. A holder is not a holder in due course if he takes a negotiable instrument with notice that it is issued in violation of this section. A holder in due course is not subject to the liabilities prescribed in this chapter."

This section was taken for all present purposes verbatim from Sec. 2.403 of the Uniform Commercial Credit Code. That code has not been enacted by this state.

Title 5, Sec. 322 is the other section of the Mini-Code which defendant contends is the penalty section to be applied to the violation of Sec. 319(a). Sec. 322 is as follows:

"No creditor under this chapter shall bring suit on any debt for collection, and no judgment by default or otherwise

shall be rendered until the creditor shall file an affidavit stating that (a) there has not been a violation of provisions of this chapter, and (b) that the debtor (if a resident of this state) on information and belief of creditor is a resident of the county in which the suit is filed. If such violation exists or if the debtor is not a resident of the county in which suit is filed, the suit shall be abated."

It is obvious that if 319(a) was not violated, we need not discuss Sec. 322. We comment here however, that Sec. 322, unlike Sec. 319(a) was not a part of the Uniform Commercial Credit Code. It has no counterpart in that code. It is our decision as hereinafter discussed that 319(a) was not violated. Therefore we deem it unnecessary to this decision to construe Sec. 322.

■ The obvious intention of Sec. 319(a) is to prevent the use of negotiable instruments in consumer credit transactions of the kind subject to the Mini-Code, and thus cut off the benefits accruing to a holder in due course permitted by Sec. 3–305 of the Uniform Commercial Code. The practice of taking negotiable instruments as evidence of a credit sale of poor quality or defective consumer goods to uneducated and unsophisticated purchasers, then cutting off most defenses of the purchaser to collection by quick or simultaneous transfer to a holder in due course is well known to all. The inclusion of Sec. 319(a) in the Mini-Code was an effort by the legislature to curb or prevent such practice by prescribing the type of instrument that might be taken by the creditor or seller in the original transaction. Though directing the consumer credit seller not to take negotiable paper, other than a check, as evidence of the obligation of the purchaser, Sec. 319(a) protects a holder in due course if such should be taken. Of course, it is difficult to conceive how one could be a holder of a negotiable instrument which showed that it was taken in the credit sale of consumer merchandise with retention of title and a purchase money security interest, without knowledge that it arose from a Mini-Code transaction.

This analysis of Sec. 319(a) in summary discloses two aspects. First, the legislature in enacting the Consumer Credit Act (Mini-Code) intended that instruments drawn by regulated credit sellers and presented by them to their customers for execution as evidence of obligations arising from a sale, should not be negotiable commercial paper as defined by Article 3, Sec. 104, Uniform Commercial Code. Second, if in spite of the prohibition of the statute, a negotiable instrument should be taken, a holder thereof cannot be a holder in due course if he takes the negotiable instrument with notice that it was issued as a result of a consumer credit sale. The buyer is thus protected by a prohibition against the creditor and by the restrictions of notice placed upon a holder should a negotiable instrument be taken in violation of the statute.

■ If the instrument to be taken as evidence of the obligation of the buyer is not to be a negotiable instrument under the provisions of Article 3 of the Uniform Commercial Code, it can only be classified as a contract creating a security interest under Article 9, Uniform Commercial Code.

Upon examination of the instrument taken by plaintiff in this case and consideration of the circumstances and purpose for which it was taken, we conclude that it is not a negotiable instrument under the provisions of Article 3 of the Uniform Commercial Code, but is a contract creating a security interest under Article 9 of the Uniform Commercial Code.

■ Due to its length, we do not set out the contract signed by both plaintiff and defendant in this case; however, we agree with defendant that it contains the necessary elements of a negotiable instrument set out in Sec. 3–104 of the U.C.C. It also contains other terms which do not affect negotiability according to Sec. 3–112, U.C.C.

Therefore, we do not hold the instrument non-negotiable because it contains terms and conditions foreign to a negotiable instrument and not permitted by Sec. 3–112.

Amici have cited *Geiger Finance Company v. Graham*, 123 Ga.App. 771, 182 S.E.2d 521; *Discount Purchasing Company v. Porch*, 12 U.C.C.Rep.Ser. 600, (Tenn.Ct. of App., 1973), and *Pacific Finance Loans v. Goodwin*, 41 Ohio App.2d 141, 324 N.E.2d 578. These cases were all suits on instruments entitled "Retail Installment Contract" or similar titles. They were suits brought on the instrument by plaintiffs claiming to be holders in due course. The appellate courts held in each instance that the plaintiffs had no holder in due course status because the instruments were not negotiable under Article 3 of the U.C.C. but were contracts arising from the credit sale of consumer goods as they purported to be. Such instruments were subject to the provisions of Article 9 of the U.C.C. Though the opinions in *Geiger* and *Porch, Supra,* discussed the fact that the instruments contained obligations and conditions beyond those permitted a negotiable instrument by Sec. 3–112, U.C.C., the basic premise of the decisions was that even though the instruments contained terms of negotiability, they were in fact, just what they were stated to be, retail installment contracts. Not Article 3 commercial paper but Article 9 instruments.

In the *Geiger* case, the court pointed·out that Georgia had enacted Code Chapter 96–9 specifically covering retail installment transactions and that it was clear that the legislature considered such contracts to be something other than Article 3 commercial papers.

 As with the Georgia Code, Chapter 96–9, the Mini-Code is supplementary to the Uniform Commercial Code of Alabama. The instrument in the instant case is entitled "Retail Installment Agreement (Security Interest)." It was drawn by one regulated by the Mini-Code. It contains matters required by the Mini-Code, and the rules and regulations issued by the administrator of the act. In enacting the Mini-Code the Alabama legislature intended that contracts drawn thereunder not be commercial paper in the sense of negotiability.

Sec. 3–103(2), U.C.C. provides that Article 3 is subject to the provisions of Article 9. It recognizes that instruments which by included terms might satisfy requirements of negotiability may, because of the nature of the transaction, be subject to Article 9. If conflict arises Article ·3, being general, becomes subject to Article 9. 11 Am.Jr.2d, Bills and Notes, Sec. 47; Vol. 2 Anderson, *Uniform Commercial Code*, Sec. 3–103:3, page 592; Sec. 3–103, U.C.C.

Though the contract here contains in form sufficient terms for it to fall within Article 3, the bulk of its terms provide for retention of title and preservation of a purchase money security interest as prescribed by Article 9. Therefore, the specific provisions of Article 9 control. Any doubt as to negotiability is resolved against negotiability. *Geiger Finance Co. v. Graham, Supra.*

Sec. 9–105(1)(g) U.C.C. provides as follows:

"(g) 'Instrument' means a negotiable instrument (defined in Section 3–104), or a security (defined in Section 8–102) or any other writing which evidences a right to the payment of money *and is not itself a security agreement or lease* and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." (Emphasis supplied.)

The comment to the above states:

" 'Instrument': . . . If a writing is itself a security agreement or lease with respect to specific goods it is not an instrument although it otherwise meets the term of the definition."

It is the opinion of the court, though probably prolixly stated, that the ․instrument here is not a negotiable instrument

but is a retail installment contract and security agreement subject to the provisions of Article 9 of the Uniform Commercial Code. The defense that suit must be abated under the provisions of Title 5, Sec. 322 (Mini-Code) of the Alabama Code is not well taken and was due to be dismissed as a matter of law.

Defendant next charges error in the granting of summary judgment in favor of plaintiff on defendant's counter-claim for penalty to be assessed against plaintiff for violation of the disclosure requirements of the Federal Truth-In-Lending Act, Title 15, Chapter 41, *U.S.C.* and Regulation Z promulgated under authority of the Act by the Federal Reserve Board.

Defendant charged plaintiff by way of counter-claim with violation of the Act, and demanded judgment under provisions thereof for penalty of $100.00 and costs. A copy of the contract with its disclosures was attached. Defendant subsequently moved for summary judgment thereon, again attaching a copy of the contract. Plaintiff then filed motion for summary judgment on the counter-claim. Plaintiff's motion was granted without supporting affidavits.

Defendant charges that the court erred as a matter of law because the contract shows on its face to be in violation of credit disclosure requirements. Title 15, Sec. 1631(a) *U.S.C.* provides as follows:

"(a) Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended and upon whom a finance charge is or may be imposed, the information required under this part."

Title 15 Sec. 1638, *U.S.C.* sets out the items to be disclosed. Among the items for disclosure is the "default, delinquency, or similar charges payable in the event of late payments."

Title 15, Sec. 1640, *U.S.C.* sets the liability to the buyer for failure to properly disclose and further provides that an action may be brought in federal district court or any other court of competent jurisdiction.

Regulation Z, Sec. 226.6 also requires disclosures be made clearly, conspicuously and in meaningful sequence. It further provides that the terms "finance charge" and "annual percentage rate" shall be printed more conspicuously than other required disclosures and not in less than 10 point type.

■ Examination of the contract taken by plaintiff discloses the default or delinquency charges to be in extremely fine print without any emphasis from the other portion of the text where located. Though neither the Act nor Regulation Z defines the terms clearly and conspicuously, we find a definition of such terms in our own Uniform Commercial Code, Title 7A, Sec. 1–201(10). There it is said:

"A term or clause is conspicuous when it is so written that a reasonable person . . . ought to have noticed it. . . . Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color."

With that definition, the required disclosure of the default or delinquency charges is not as a matter of law clear and conspicuously made in the contract.

■ The items "finance charge" and "annual percentage rate" are found in an offset column on the right of the contract. Though all the items in the column are in larger print than the default and delinquency charges, the items "finance charge" and "annual percentage rate" are not in larger print than the other required items of disclosure. They are not more conspicuous than the other items as required by Regulation Z and not in the 10 point type required. Thus, Regulation Z is again violated as a matter of law.

■ A creditor in violation of the Act and Regulation Z may escape liability therefor only by proof that the violation was unintentional and resulted from bona

fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error. Title 15, Sec. 1640(c), *U.S.C.* This "good faith" defense cannot be supported by evidence of ignorance or error of law. *Haynes v. Logan Furniture Mart,* 7 Cir., 503 F.2d 1161; *Palmer v. Wilson, 9* Cir., 502 F.2d 860.

Plaintiff here did not traverse defendant's motion for summary judgment but joined issue on the counter-claim with a general denial. The instrument itself furnishing sufficient evidence of violation, summary judgment for plaintiff was error. Such judgment was due to be given on the motion of defendant. The trial court did not err in granting plaintiff's motion to dismiss defendant's second defense. The court did err in granting summary judgment to plaintiff as to defendant's first counter-claim. We therefore reverse and remand because of such error, and direct summary judgment be entered on defendant's counter-claim.

Reversed and remanded with directions.

BRADLEY and HOLMES, JJ., concur.