Bank of Brewton, assignee of a sales contract, note and security agreement, made between Calvin Ingram and Golden Motors, brought suit to recover an automobile. Ingram filed answer charging violation of Title 5, Sec. 317, Code of Alabama (1940) (Mini-Code) and seeking recovery of the liabilities for charging an excess finance charge set in Title 5, Sec. 330, Code. After trial orally before the court, judgment was entered for the property (an automobile) sued for, but directing the forfeiture of all finance charges charged to Ingram in the contract. Ingram appeals contending error in the failure of the court to find from the evidence that there was an excess finance charge made in deliberate violation of or in reckless disregard of the statute and imposing the penalties provided for such act. We affirm.
The record on appeal consists of the clerk's record and an agreed statement as to the evidence submitted in accord with Rule 10 (c), Alabama Rules of Appellate Procedure.
It was stipulated at pre-trial conference that Golden Motors sold an automobile to Ingram; a note and security agreement were executed by Ingram; a disclosure statement was prepared by the seller, indicating the amount financed to be $2,300, with finance charge of $460, for a total of $2,760 to be paid in 23 monthly installments; of the amount shown as finance charge, $110.40 was for credit life insurance; that sum was actually paid to the insurance company by the assignee, Bank of Brewton; Ingram, at date of trial, was $690 in arrears on the contract.
Based upon the stipulation, the trial court determined the sole issue for trial to be whether there had been excessive finance charges in the contract in violation of Title 5, Sec. 330, Code.
At trial, Ingram introduced 41 contracts, with disclosure statements, entered into between Golden Motors and purchasers of automobiles, which had subsequently been assigned to Bank of Brewton. Investigators with the State Insurance and Banking Departments testified that each of the 41 contracts included credit life insurance, usually on the debtor and his wife with improper premiums; that the charge for credit life insurance was not shown as a separate item on the disclosure statements but was included in the amount of the finance charge; that the amount shown as a finance charge appeared to be derived from a 10% add on interest charge for 24 months.
Bank of Brewton presented witnesses who testified that any error in the contract was accidental in that the premiums for credit life insurance were erroneously entered as an addition to the finance charge instead of as an itemized charge which should have been added to the amount financed; that if the amount of the insurance premium were deducted from the amount shown as finance charge, the actual finance charge would not exceed the 8% add on permitted by the statute.
It was from the evidence, related above in capsule form, that the trial court found that Ingram had been charged excess finance charges and that as a penalty the Bank should forfeit all finance charges under the contract. However, the court permitted the deduction of the credit life insurance premium from the amount shown as finance charge on the disclosure statement. The contract showed finance charges of $460 on an amount financed of $2,300. Deducting insurance premium of $110.40 leaves $349.60. Such amount was found by the court to be the finance charge to be forfeited. Ingram says that requiring such forfeiture is not enough. The court should have found that the excessive finance charge was made in deliberate violation of the statute, declared the contract void and required the Bank to return all principal as well as all finance charges.
We must now look to the statute: Title 5, Sec. 330 is as follows:
 "Liabilities of creditor making excess finance charge. — Any creditor charging a finance charge in excess of the amount authorized herein except as the result of an accidental and bona fide error in *Page 817 
computation, shall forfeit his right to any finance charge and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time after written demand, the debtor may recover a penalty of either twice the finance charge or ten times the amount of the excess charge, whichever is greater, but in any event not less than $100, together with a reasonable attorney's fee. If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void. No action under this section may be brought more than one year after due date of the last scheduled payment of the agreement pursuant to which the charge was made or in the case of open-end credit plans, one year after the excess charge is made."
The court below entered judgment for Ingram in the amount of $349.60. It stated that such amount represented forfeiture of the finance charge. We must conclude that the court found that there was an excessive finance charge and that such charge did not result from an "accidental or bona fide error in computation."[1] There is no appeal from this finding of the court by either party. Therefore, we accept it as correct without consideration.
Ingram submits that the court erred in not further finding that the excess finance charge was made "in deliberate violation of or in reckless disregard of the statute."[2] Whether the making of an excess charge was made with deliberateness or reckless disregard is a question of fact to be answered from the evidence. The trial court heard the evidence which could be said to be conflicting. Ingram produced records of 41 other contracts made by the Bank's assignor, which appeared to have the same or similar defalcations as his own. The argued inference is that such multiple instances showed a pattern of intentional and deliberate violations of the statute.
The Bank, in response, showed that during the period out of which the 41 bad contracts came, there were, in fact, 209 other contracts with which no fault was found by the investigators. Thus, there was an 80% to 20% ratio of good to bad. The inference therefore to be drawn was that the defalcation was not deliberate but only occasional and accidental.
The court having heard the evidence failed to make the finding desired and contended for by Ingram. It is the law that the finding of the court on a question of fact is presumed correct. Such finding has the standing of a jury verdict. W.T.Ratliff Company, Inc. v. Purvis, 292 Ala. 171, 291 So.2d 289. It will not be set aside unless, after allowing all reasonable presumption in favor of its correctness, there is such a preponderance of the evidence against it as to convince the reviewing court that it is palpably wrong and unjust. Prescottv. Martin, Ala., 331 So.2d 240. We find no cause in this case to set aside the judgment of the trial court. We therefore affirm.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.
[1] Some of the language of this section of the "Mini-Code" recalls our statement in the recent case of Welch v. G.F.C.Credit Corporation, Ala.Civ.App., 336 So.2d 1346, that ". . . the `Mini-Code' cannot be referred to as model legislation."
[2] Ibid. *Page 818