509 So.2d 232 (1986)
Tommie L. EDWARDS
v.
ALABAMA FARM BUREAU MUTUAL CASUALTY INSURANCE COMPANY.
Civ. 5150.
Court of Civil Appeals of Alabama.
July 2, 1986.
Rehearing Denied July 23, 1986.
*233 Robert J. Varley, of Legal Services Corp., Montgomery, for appellant.
Robert W. Bradford, Jr., of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellee.
BRADLEY, Judge.
This is a consumer credit case involving application of the Alabama Mini-Code (§§ 5-19-1 to -31, Code 1975), and the Federal Truth-in-Lending Act (15 U.S.C.A. §§ 1601-1667 (West 1982)).
This is the second appeal of this case. Since the relevant facts, as set forth in the first appeal, are essentially without dispute, we find it unnecessary to set them forth in great detail once again. For the facts in this case see Edwards v. Alabama *234 Farm Bureau Mutual Casualty Insurance Co., 453 So.2d 746 (Ala.Civ.App.1983).
In the first appeal we addressed the issue of whether the note executed by Edwards and Farm Bureau was a consumer credit transaction subject to the provisions of the Alabama Mini-Code and the Federal Truth-in-Lending Act. We answered this issue in the affirmative and reversed and remanded the case for a full hearing on Farm Bureau's claim and Edwards's counterclaim.
Following remand, Farm Bureau amended its complaint seeking to recover on an "account stated" and charging Edwards with fraud in the execution of the installment loan contract. Edwards then filed a motion to strike and/or dismiss Farm Bureau's amended complaint. Edwards's motion was denied and Farm Bureau's amendment was allowed.
During the course of the trial Farm Bureau admitted that it had assessed Edwards a finance charge in excess of that permitted under section 5-19-3, Code 1975. Over timely objection of counsel for Edwards, Farm Bureau was then allowed to introduce evidence intended to show that the excessive finance charge had resulted from a "bona fide" clerical error pursuant to section 5-19-19, Code 1975. Prior to the close of trial, over renewed objection, Farm Bureau was then allowed to orally amend its complaint to allege that any error in the note between Edwards and Farm Bureau was a bona fide clerical error.
At the conclusion of Farm Bureau's evidence, Edwards was granted a directed verdict with respect to Farm Bureau's allegations of fraud. Thereafter, the trial court held that the subject transaction was not a "consumer loan" pursuant to section 5-19-22, Code 1975, and therefore Farm Bureau was not subject to the licensing provision of that section of the Mini-Code. In regard to the other Mini-Code violations and the Truth-in-Lending violations alleged by Edwards, the trial court concluded that they were the result of bona fide errors.
The trial court then entered an order finding the "issues" in favor of Farm Bureau for the entire amount claimed in its complaint, $2,449.52, and against Edwards on his counterclaim. It is from this order that Edwards appeals.
On appeal, Edwards first argues that the trial court erred in holding that the subject transaction was not a "consumer loan," and that, therefore, Farm Bureau was not subject to the licensing requirements of section 5-19-22, Code 1975. He argues that the installment note evidencing the credit transaction was a loan or a forbearance. He argues that the Mini-Code is a usury statute and that pursuant to such statutes a loan and a forbearance are one and the same.
Prior to 1979 Farm Bureau possessed a license pursuant to the Mini-Code. Farm Bureau argues that it did not renew its license in 1979 because of advice from the State Banking Department that a license was no longer required. It contends that its actions were therefore justified. Farm Bureau also states that it does not disagree with Edwards that the transaction is a forbearance. It argues, however, that a forbearance is not the equivalent of a loan. Farm Bureau then states that throughout the Mini-Code reference is made to "forbearance" specifically. It thus argues that since the legislature did not specifically refer to a "forbearance" in section 5-19-22, Code 1975, that it did not intend for a loan and a forbearance to be synonymous. Finally, Farm Bureau states that even if the installment note does amount to a consumer loan, thus voiding the note, Edwards would still be liable to Farm Bureau for the underlying debt as an account stated.
Section 5-19-22(a) provides in pertinent part that, "No creditor shall engage in the business of making consumer loans or taking assignments of consumer credit contracts without first having obtained a license...." Certain creditors are specifically excluded from this provision. Casualty insurance companies, such as Farm Bureau, are not, however, expressly denominated as excluded creditors. Thus, in order for Farm Bureau to have violated section 5-19-22 of the Mini-Code, the installment note executed by Edwards and Farm Bureau must constitute a "consumer loan."
*235 The record reveals that throughout the proceedings regarding the first appeal of this case Farm Bureau denominated the installment note as a "loan." Farm Bureau's ledger sheet, showing Edwards's payment history, also referred to this transaction as a loan.
The record also reveals that from April 12, 1972 until October 1978 Farm Bureau was licensed pursuant to section 5-19-22, Code 1975. In 1978 Farm Bureau decided to organize another corporation to handle installment notes on subrogation matters. Farm Bureau then discussed this venture with the State Banking Department and was informed that if a new corporation were established Farm Bureau itself was no longer required to be licensed under the Mini-Code. Shortly after our first decision in this case, however, Farm Bureau obtained a license pursuant to the requirements of section 5-19-22, Code 1975.
Additionally, the record shows that on remand the trial court recalled the issues constituting the first appeal as being whether the note executed by Edwards to Farm Bureau was a loan.
A loan is "a sum of money lent at interest." The American Heritage Dictionary of the English Language 413 (1981). A forbearance "signifies the contractual obligation of the creditor to forbear during a given period to require of the debtor payment of an existing debt then due and payable." 91 C.J.S. Usury § 23(a) (1955) (footnote omitted). See also, Black's Law Dictionary 773 (rev. 4th ed. 1968).
"Usury" is the contracting for or reserving of something in excess of the amount allowed by loan for the loan or forbearance of money. 91 C.J.S. Usury § 1 (1955). See also, Miller v. Graham, 196 Ala. 230, 72 So. 87 (Ala.1916). Alabama's Mini-Code, §§ 5-19-1 to -31, Code 1975, seeks to regulate usurious contracts or transactions. As such, it can fairly be said that our Mini-Code is a "usury law."
The common law rule in Alabama is that a loan and a forbearance are identical in purpose and effect for purposes of interpreting usury laws. Law, Clark & Co. v. Mitchell, 200 Ala. 565, 76 So. 923 (1917). See also, 91 C.J.S. Usury § 23(a) (1955). It is also well settled that:
"[S]tatutes are to be construed with reference to the principles of the common law in force at the time of their passage; and.... Words used in a statute which have a definite and settled meaning at common law are presumed to be employed in the same sense, and will be so construed unless an intent to the contrary clearly appears."
82 C.J.S. Statutes § 363 (1953) (emphasis added) (footnotes omitted). See also, Ex parte Pittman Construction Co., 28 Ala. App. 134, 180 So. 725, cert. denied, 236 Ala. 22, 180 So. 728 (1938). Thus, in light of this principle, we must examine the Mini-Code to determine if it was the intent of the legislature to alter the meaning of the terms "loan" and "forbearance" as used in this usury statute.
It appears that only three subsections of the Mini-Code are applicable to this analysis. See, §§ 5-19-3(a), -4(b), -31(a), Code 1975. In those sections the phrase "loan or forbearance" (emphasis added) is always distinguished from a "credit sale." Thus, the aggregation of "loans" with "forbearances" as distinct from "credit sales," indicates that the relevant distinction for Mini-Code purposes is between "loans," which includes "forbearances," and "credit sales." Therefore, we find no indication that the legislature intended to change the common law meaning of the terms "loan" and "forbearance." Bound by the principles as set forth above, we thus conclude that the term "loan" as used in section 5-19-22, Code 1975, incorporates the term "forbearance" into that section.
Based on the above, we find that Farm Bureau should have been licensed when entering into the transaction with Edwards. Furthermore, whether willful or not, the law states that the failure to have a license before making a consumer loan renders the loan instrument unenforceable as a matter of public policy. See, Derico v. Duncan, 410 So.2d 27 (Ala.1982). As such, we find the installment note in the instant *236 case to be void, and that Edwards is thus not liable on that instrument.
Since the trial court held for Farm Bureau "on all issues" without further rationale, we must now turn to Farm Bureau's contention that if the installment note is void Edwards is still liable to Farm Bureau for an account stated on the underlying debt.
Before deciding this issue, we find it necessary to set forth the purpose of the Federal Truth-in-Lending Act and Alabama's Mini-Code.
To resolve the problems of a misled consumer in a consumer credit transaction, Congress and many state legislatures passed acts requiring certain disclosures to be made to the borrowing consumer. See, 15 U.S.C.A. § 1601-1667 (West 1982). Several of the state acts that have been passed are patterned after the Uniform Consumer Credit Code (U.C.C.C.) adopted by the National Conference of Commissioners on Uniform State Laws.
In pertinent part the U.C.C.C. appears to provide that although a loan agreement may be voided as an unauthorized transaction due to the creditor's failure to comply with an act's mandates, the creditor is still able to pursue the amount owing from the debtor as the creditor's "rights on a debt." See, Uniform Consumer Credit Code, 1968 Act, (U.L.A.) § 5.202(5). In this regard, Alabama's version of a consumer credit act, the Mini-Code, is notably different.
When an instrument is executed that falls within the purview of the Alabama Mini-Code, it must conform to the requirements set forth in the Mini-Code. A failure to comply with such requirements renders not only the instrument but the underlying obligation as well void. See, Jefferson v. Mitchell Select Furniture Co., 56 Ala.App. 259, 321 So.2d 216 (Ala.Civ. App.1975). See also, Derico, supra. Furthermore, if a creditor brings an action "on any debt for collection" and a violation of the Mini-Code exists, section 5-19-11, Code 1975, mandates that "the action shall be abated." (emphasis added)
In Derico, supra, the Supreme Court of Alabama was called upon to address the consequences of the failure of a creditor, within the meaning of the Mini-Code, to obtain a license before transacting business pursuant to section 5-19-22(a), Code 1975. In the Derico case, petitioner-homeowner and defendant-builder entered into an agreement whereby defendant-builder was to make certain repairs on petitioner-homeowner's home. Additionally, the agreement provided that defendant-builder could obtain a second mortgage on petitioner-homeowner's home by satisfying an outstanding mortgage already existing on the home. At the time this agreement was entered into, defendant-builder was not licensed pursuant to section 5-19-22(a), Code 1975. After reviewing the case the court held that "contracts made in violation of the requirements of the Mini-Code are null, void, and unenforceable as a matter of public policy." The court also stated that "that portion of Plaintiff's indebtedness represented by the loan (as distinguished from the debt on the contract to repair) is void, including both the principal and the interest. However, the interest charges on the voided loan cannot be added to the construction debt...." (emphasis added) The court obviously felt that the contractual repair provision of the agreement was separable from the provisions representing the loan. It apparently concluded that the contractual repair provision, constituting a separate debt, was not subject to the mandates of the Mini-Code and therefore was not nullifiable. Therefore, the only aspect of the agreement upon which defendant-builder was entitled to recover was the amount owing for the construction debt.
The instant case is clearly distinguishable from Derico. In this case the promissory note does not contain separable provisions representing indebtedness. When Farm Bureau entered into the installment note with Edwards as a result of its collection process, Farm Bureau's subrogation claim merged into the installment note. Thus, Farm Bureau's only cause of action rested upon the note itself. As a result, when Farm Bureau sought collection of the note, representing the debt owing, the collection *237 attempt fell within the mandates of the Mini-Code.
As noted above, when a creditor brings an action for collection on a debt owing, the creditor must comply with the Mini-Code or the action abates. § 5-19-11, Code 1975. Since Farm Bureau's collection attempt was within the provisions of the Mini-Code and Farm Bureau had violated the Mini-Code by failing to have a license, the mandates of § 5-19-11, Code 1975, must be followed.
Section 5-19-11 specifically refers to "an action on any debt for collection." (emphasis added) Keeping in mind the purposes of the Mini-Code and the supreme court's position in Derico, we conclude that it was the legislature's intent not only to prevent the enforcement of an instrument evidencing a debt but also the debt itself. We believe that to hold otherwise would emasculate the Mini-Code. Additionally, we believe that had the legislature intended otherwise it would have adopted a provision similar to that of the U.C.C.C.
Since it is without dispute that Farm Bureau violated the Mini-Code by not being licensed at the time it entered into the transaction with Edwards, we hold that Farm Bureau's action on the note as well as the underlying subrogation obligation should have been abated pursuant to section 5-19-11, Code 1975. Accordingly, we reverse the decision of the trial court entering judgment for Farm Bureau in the amount of $2,449.52.
Edwards's next contention is that the trial court erred in holding that Farm Bureau's violations of the Alabama Mini-Code and the Federal Truth-in-Lending Act had occurred as the result of "bona fide errors," pursuant to each act's respective bona fide error exception. He argues that Farm Bureau addressed only a few of the alleged violations, the ones to which the bona fide error defense applied, and that the trial court's blanket denial of his counterclaim was erroneous. Edwards contends that Farm Bureau was guilty of several additional violations, disclosure violations, of each respective act, and that the bona fide error defense would not apply to these errors.
As to the alleged violations within the bona fide error exception, Farm Bureau argues that it met its burden of proof regarding the bona fide error defense. As to the additional violations alleged, Farm Bureau argues that those allegations pertain to "disclosure requirements," and that disclosure requirements must be adhered to only if they are applicable or relevant to the particular transaction in question.
In considering the alleged violations of the Truth-in-Lending Act, we find it necessary to first review section 15 U.S.C.A. § 1640(c) (West 1982), which deals with the bona fide error exception.
Section 1640(c) states, in pertinent part:
"A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."
It has been held that the Truth-in-Lending bona fide error defense is an affirmative defense, and that, consequently, the lender bears the burden of proof. See, Turner v. Firestone Tire & Rubber Co., 537 F.2d 1296 (5th Cir.1976). See also, 15 U.S.C.A. § 1640(c) (West 1982). In order to meet that burden, the lender must satisfy the elements of a two-pronged test. First, he must show that the violation "was not intentional, and resulted from a bona fide error," and, second, that it occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246 (3d Cir.1980). Commenting on the maintenance of procedures test, the Thomka court stated further:
"The requirement has been construed strictly by the courts to require that a special system be established to assure that no initial errors occur, and that a checking mechanism be maintained to *238 catch any errors that slip through the system." (citations omitted).
Furthermore, in regard to specific types of errors, whether an excessive finance charge was the result of an accidental and bona fide error is a question of fact for the trial court. Additionally, it is the law that the finding of the trial court on a question of fact is presumed correct and will not be disturbed on appeal unless palpably wrong. Ingram v. Bank of Brewton, 340 So.2d 815 (Ala.Civ.App.1976).
A careful review of the evidence in the instant case reveals that a Farm Bureau employee made two errors in filling out the installment note. First, the employee provided that the first payment on the note was due on March 16, 1979, the day the note was executed, rather than thirty days later as required by Farm Bureau procedures. Second, on the day the note was executed, Edwards made his first payment on the note. Apparently, this payment should have been treated as a down payment and the principal amount of the note reduced accordingly.
In regard to these errors, Farm Bureau called two employees to testify. Neither of these witnesses had dealt with Edwards in preparing the installment note, nor was the name of the employee who purportedly erred ever even mentioned.
Mr. Harper, the collection manager of subrogation contracts for Farm Bureau, testified as to the training program required of all Farm Bureau employees and as to the procedures followed by Farm Bureau to avoid error. In sum, he stated that Farm Bureau had a three-tiered system in effect to ensure that errors would not be made. First, all persons who filled out the installment notes were required to have five days of training and the aid of a manual to assist them in correctly filling out the notes. Second, the notes were processed through a computer to ensure that all calculations were accurate and in balance. Finally, a subrogation clerk reviewed the note in detail to ensure that it had been completed accurately.
While at first blush the testimony of Mr. Harper might seem entirely satisfactory to render the conclusion that the errors complained of were unintentional, closer scrutiny reveals that the evidence presented by Farm Bureau was insufficient to satisfy the elements of the bona fide error test.
The "unintentional" element of the Truth-in-Lending bona fide error defense is directed to the acts which constituted the violation of the law, and not to the violation of the act itself. See, Buford v. American Finance Co., 333 F.Supp. 1243 (N.D.Ga. 1971).
In this case we opine that the unintentional aspect of the test was not met by Farm Bureau. Neither of the employees called by Farm Bureau had any personal, firsthand knowledge or involvement in the making or execution of Edwards's installment loan contract. Furthermore, the employee who was alleged to have actually erred was not even mentioned by name. We do not know whether this employee had ever attended Farm Bureau's training program, had ever been familiarized with Farm Bureau's procedures or manual, or had ever completed an installment loan contract prior or subsequent to the note in question. In short, there simply was no evidence offered by Farm Bureau to authorize a conclusion that the errors complained of by Edwards were "unintentional" and were the result of bona fide errors. Thus, we hold that the errors made by the Farm Bureau employee were not unintentional acts and, therefore, Farm Bureau's bona fide error defense must fail. We conclude, therefore, that the findings of the trial court in this regard were erroneous and reverse its decision as to this issue.
Having determined that the errors of Farm Bureau did not fall within the bona fide error exception and, thus, were violative of the Truth-in-Lending Act, we find it unnecessary to reach the other issues raised by Edwards as alternative bases of recovery pertaining to the alleged violations of the Federal Truth-in-Lending Act. We note, however, that we are not to be understood as saying that additional violations of the Truth-in-Lending Act might not exist. Our decision here, to address only *239 this violation, is based solely upon the language of 15 U.S.C.A. § 1640(g) (West 1982). It is provided in 15 U.S.C.A. § 1640(g) (West 1982) that even if there are multiple violations, there is only one recovery permissible under the Truth-in-Lending Act. See, Tinsman v. Moline Beneficial Finance Co., 531 F.2d 815 (7th Cir.1976). Thus, in this particular case the recovery allowed Edwards is the costs of the action, together with a reasonable attorney's fee to be determined by the trial court. See, 15 U.S.C.A. § 1640(a)(3) (West 1982). Additionally, Edwards is entitled to "twice the amount of any finance charge in connection with the transaction ... not to be less than $100 nor greater than $1,000." See, 15 U.S.C.A. § 1640(a)(2)(A)(i) (West 1982).
Finally, we turn to Edwards's contention that Farm Bureau failed to prove the essential elements of the Mini-Code's "bona fide error" defense. At the outset, we note that, although we have already found the installment note in question to be void, we must review this contention because the failure to prove this defense would entitle Edwards to an additional penalty.
Unlike the Truth-in-Lending Act, the Mini-Code refers to "errors in computation." Section 5-19-19, Code 1975, states in pertinent part:
"Any creditor charging a finance charge in excess of the amount authorized herein, except as the result of an accidental and bona fide error in computation, shall forfeit his right to any finance charge, and shall refund to the debtor the total amount of the finance charge.... If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void."
It is axiomatic that words used in a statute are to be given their usual and commonly understood meaning unless it is clear from the statute that a different meaning was intended. See, Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984).
The word "computation" is commonly understood to mean, "The act or action of computing." Webster's Seventh New Collegiate Dictionary 171 (1976). The word "compute" is defined: "To determine by mathematics, especially by numerical methods." The American Heritage Dictionary of the English Language 149 (1981). Furthermore, the Supreme Judicial Court of Maine, in construing the term "error in computation," although in a different statutory context, concluded that "errors in computation" referred only to arithmetical or mathematical errors. See, Goddard v. Shapiro Brothers Shoe Co., 234 A.2d 326 (Me.1967). Thus, we opine that the term "error in computation" as it is employed in section 5-19-19, Code 1975, should be read to mean an arithmetical or mathematical error.
Applying the aforestated law to the instant case, it is quite clear that the excessive finance charge admittedly assessed Edwards by Farm Bureau did not result from an arithmetical error. Farm Bureau collected a payment from Edwards on the same date that the installment loan contract was executed. As a matter of law, that payment should have been treated as a down payment, rather than as a part of the principal amount upon which the finance charge was assessed. While the failure to deduct Edwards's first payment may have resulted from a clerical error, it can be described only as an error of law, and not an "error in computation." See, Goddard, supra. Accord, Fisher v. Bethesda Discount Corp., 221 Md. 271, 157 A.2d 265 (1960). Therefore, pursuant to section 5-19-19, Code 1975, as set forth above, we find that Edwards is entitled to a refund of the two payments he made to Farm Bureau.
In accordance with the above, we hold that the installment loan contract in question was void pursuant to section 5-19-22(a) and that this action in part should therefore have been abated pursuant to section 5-19-11, Code 1975. Pursuant to section 5-19-19 of the Mini-Code, we also *240 find that Edwards is entitled to a refund of his payments to Farm Bureau. Finally, in regard to the Truth-in-Lending Act violation, we find that Edwards is entitled to his costs, an attorney's fee, and a penalty pursuant to 15 U.S.C.A. § 1640(a)(2)(A)(i) (West 1982).
The judgment of the trial court awarding Farm Bureau $2,449.52 is reversed, and the judgment finding no violation of the Alabama Mini-Code and the Federal Truth-in-Lending Act is also reversed. The cause is remanded for the trial court to enter an order requiring Farm Bureau to refund to Edwards the payments made by him on the loan, and to enter an order awarding to Edwards his court costs, an attorney's fee, and a penalty, as required by 15 U.S.C.A. § 1640(a)(2)(A)(i) (West 1982).
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., concurs.
HOLMES, J., dissents.
HOLMES, Judge (dissenting).
I respectfully dissent. Quite frankly, there appears to be some support for the majority opinion authored by my distinguished colleague, Judge Bradley. Additionally, the majority opinion is well "written." However, I feel that a dissent is appropriate and, needless to say, under the facts of this case the dissent conclusions are warranted.
As indicated in the majority opinion, in the case at bar it was admitted by Farm Bureau that it made two "errors" in filling out the installment note. These errors consisted of: (1) incorrectly providing for the first payment to be due and payable on March 16, 1979, the day the note was executed, rather than thirty days later, and (2) incorrectly treating defendant's first payment as a "regular" payment rather than as a "down" payment, thus reducing the principal amount of the note.
In considering these errors for purposes of the Truth-in-Lending Act, a determination must be made if the "admitted" violations fall within the "bona fide" error provisions of 15 U.S.C.A. § 1640(c) (West 1982). This section, at the time the note was executed, provided for an exception to the liability provisions of the Truth-in-Lending Act, when such errors were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error."
"The bona fide error defense of Section 1640(c) requires the creditor to show `by a preponderance of the evidence' that the violation `was not intentional, and resulted from a bona fide error;' and second, that it occurred `notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 250 (3d Cir.1980).
The first prong of this two-part test can be shown by evidence proving the error to be merely clerical. Thomka, 619 F.2d at 250; McGowan v. King, Inc., 569 F.2d 845, 849 (5th Cir.1978).
It is a well-settled rule of law that, where evidence is presented ore tenus, the trial court's judgment must be affirmed unless that judgment is plainly and palpably incorrect.
In the case at bar, the installment note was introduced into evidence. Testimony was also presented that the two errors were not only in violation of the Truth-in-Lending Act but also in error with regard to Farm Bureau procedure. Additionally, evidence was presented as to the procedures utilized by Farm Bureau to avoid such errors. The evidence presented revealed that Farm Bureau had a three-tier system to effectuate the elimination of any errors. These procedures included the education of all employees who were required to fill out installment notes like the one in the case at bar. All of these employees were given manuals to assist them in correctly filling out the installment notes. Second, Farm Bureau had a computer program designed to catch errors, as the ones at bar. Finally, the installment note was reviewed in detail to ensure that the note had been completed accurately and in full.
Given this evidence, I find that Farm Bureau has established and met its burden *241 that these two errors were "unintentional" and bona fide errors as defined in 15 U.S. C.A. § 1640(c) (West 1982).
Additionally, the majority has found that Farm Bureau has violated the Mini-Code by failing to acquire a license as provided at § 5-19-22(a) of the Code of Alabama of 1975. Farm Bureau's failure to acquire the necessary license renders the installment note void and unenforceable. See Derico v. Duncan, 410 So.2d 27 (Ala.1982).
It is my understanding of our supreme court's decision in Derico that, while a violation of the Mini-Code renders the installment note in the case at bar void, it does not necessarily, as the majority found, dispose of the underlying debt. This conclusion is premised upon the fact that, under certain circumstances, the underlying debt may have a separate and distinguishable existence from the installment note formally evidencing it. I would find that the facts of this case are analogous to the facts in Derico and, therefore, the underlying debt is not discharged.
The majority has cited as additional support for its conclusion that the underlying debt is discharged the case of Jefferson v. Mitchell Select Furniture Co., 56 Ala.App. 259, 321 So.2d 216 (Ala.Civ.App.1975). Apparently, the majority interprets Jefferson as holding that Alabama Code (1940), Title 5, Sec. 322 (current version Ala.Code (1975), § 5-19-11) penalized any creditor for violating the Mini-Code by rendering the instrument and underlying transaction void and unenforceable. However, in reading Jefferson, I find no support for the proposition cited by the majority. In fact, this court stated quite clearly that we found it unnecessary to construe Section 322 in Jefferson.
Additionally, I find that the majority's reliance on Ala.Code (1975), § 5-19-11, is misplaced. This code section states as follows:
"No creditor under this chapter shall bring an action on any debt for collection, and no judgment by default or otherwise shall be entered until the creditor shall file an affidavit stating that
"(1) There has not been a violation of the provisions of this chapter, and
"(2) The debtor, if a resident of this state, on information and belief of creditor is a resident of the county in which the action is filed.
"If such violation exists or if the debtor is not a resident of the county in which such action is filed, the action shall be abated."
Ala. Code (1975), § 5-19-11. It is quite clear from the wording of this section that the penalty provisions contained within § 5-19-11 are applicable only to actions that fall within the governance of the Mini-Code. Any other application of § 5-19-11 would be erroneous and imaginative.
Therefore, I must respectfully dissent with regard to the issues discussed above.