## FISHER ET AL. v. BETHESDA DISCOUNT CORPORATION

[No. 78, September Term, 1959.]

*Decided January 19, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*William H. Pattison, Jr.,* for the appellants.

*James A. McAuliffe, Jr.,* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Plaintiffs-appellants, who were improperly charged $2.68 by the appellee, a company doing business under the Maryland Industrial Finance Law, Code (1957), Article 11, Sections 163-205, seek to have their entire loan of $800 declared void and uncollectible. Whether or not they are entitled to this relief depends upon the answer to this question: Was the collection of the confessedly improper delinquent charge by the appellee the "result of an accidental or bona fide error of computation" within the meaning of Section 196 (C), of said Article 11?

The loan was effected by the execution of a chattel mortgage and note which required the plaintiffs to make fourteen installment payments of $53.50 and one final payment, thereafter. The installments became due on the 7th day of each successive month until the whole amount of the indebtedness, with interest, was paid. The appellants did not pay the installment that became due on Friday, June 7, 1957, on that exact date; but did so on Wednesday, June 12, 1957, at which time the appellee's employees collected, over the protest of the appellants, the said $2.68 upon the theory that it was due appellee as a delinquent charge.

Section 196 (A) (3) provides that a licensee may collect from borrowers, in addition to interest and other charges, "a delinquent charge of five cents (5¢) for each default *continuing for five (5) or more days in the payment of one dollar* * * *," and Section 196 (C) states:

> "In addition to the interest, charges and fees specifically provided for in this article, no further or other amount whatsoever shall be directly or indirectly charged, contracted for, or received. If any amount in excess of the charges permitted by this article is charged, contracted for, or received, *except as the result of an accidental or bona fide error of computation,* the contract of loan shall be void, and the licensee shall have no right to collect or receive any principal, interest, charges, or recompense whatsoever; and the licensee and the several members, officers, directors, agents, and employees thereof who shall have *wilfully and knowingly* participated in such violation, shall be guilty of a misdemeanor * * *." (All emphasis supplied.)

The appellee candidly concedes that it collected the $2.68; when it did so, the installment was not in default for "five (5) days or more," but, in reality, was only in the fourth day of default in accordance with Code (1957), Article 94, Section 2, (a law of which neither the appellee nor the Bank Commissioner's office had any knowledge) which provides that Sundays, when the period of time to be computed is seven

days or less, shall be excluded (See also Maryland Rule 8.) ; that this had been its regular method, as well as that of other Industrial Loan Companies throughout the state, of calculating when delinquent charges were due; and that, although the collection of the delinquent charge in this case was admittedly erroneous, it was done as "the result of an accidental or bona fide error of computation," which, under the provisions of Section 196 (C) excuses it from losing the entire loan.

The appellant contends that the ignorance of the appellee and the Bank Commissioner's office of the existence of Article 94, Section 2, is completely immaterial; the erroneous collection of the delinquent charge in this case by the appellee was a receipt by it of an "amount in excess of the charges permitted by" Section 196 (C), and that it was not "the result of an accidental or bona fide error of computation" within the contemplation of the provisions of said Section 196 (C) ; consequently, the contract of loan is void.

With the facts being undisputed, the decision naturally turns upon whether the collection of the overcharge was "the result of an accidental or *bona fide* error of computation." Although the briefs on both sides were prepared with ability and care, no case is cited where any court has construed this exact language in the context used, and our independent research has produced none. There are many states that have similar provisions in their Small Loan Acts but we do not find any case where they have been called upon to interpret this exact provision.

A liberal interpretation is usually accorded usury statutes to prevent the recovery of usurious interest by the lender, even though they are in derogation of the common law. *Liberty Finance Company, Inc. v. Catterton*, 161 Md. 650, 654, 158 A. 16. (A case under our Small Loan Act.) But in regard to provisions, which impose penalties and forfeitures and trench upon the lender's right to recover the principal and legal interest, generally a strict construction is applied, on the ground that these provisions are intended as enforcement measures only and are not intended to be compensatory. 3 Sutherland, *Statutory Construction* (3rd Ed.), Section

7008.  And there is no legal obstacle to the remedial portions of a statute being construed liberally, and those that impose penalties or forfeitures being construed strictly. *Smith v. Higinbothom,* 187 Md. 115, 130, 48 A. 2d 754. We think that Section 196 (C) should be strictly construed.

There is no contention that the error made by the appellee was "accidental," nor does the appellant ascribe a corrupt motive or criminal design to the appellee; hence, our inquiry is limited to: (a) was the collection of the overcharge an "error of computation," and (b), if it be determined that it was not, does the fact that the appellee's officers and employees did not "wilfully and knowingly" collect said overcharge with an evil and corrupt design excuse the loan from being void under the provisions of Section 196 (C)?

(a)

The word "computation" is defined as the "act or process of computing; calculation; reckoning." [1] We do not deem it necessary nor desirable to attempt, at this time, to delineate all of the possible overcharges that might, or might not, result from an "error of computation." We think, however, that the overcharge in the instant case was clearly not an error of computation as contemplated by the statute. The statute plainly connotes such errors as the honest miscalculation of interest and/or principal due, as the result of a computation, not a mistake of law as to what, legally, may be collected. It will be noted that the statute does not excuse overcharges for *all* errors, even though made accidentally or in good faith, but specifically limits the ones that will prevent the loan from becoming void to errors of *computation.* Here, we do not have an isolated error of fact in making a summation, but a two-way mistake of law—the failure to permit the expiration of the fifth day before claiming a default, and in making no allowance for the intervening Sunday—which had been adhered to and followed consistently for a long period of time. [2]

---

1. Webster's New International Dictionary (2nd Ed.).

2. Virginia, in its Small Loan Act, makes an exception when it is shown that "* * * an accidental and bona fide error of compu-

While the situation with which we are dealing does not, technically, involve usury, but a penalty for exacting a delinquent charge for an alleged default, the authorities very generally in dealing with usury hold that where there is an exaction of more than legal interest resulting from an honest mistake of fact, such as an error in the computation of interest or a scrivener's mistake in drawing an instrument, this does not constitute usury; but a mistake of law does not ordinarily relieve a transaction from the taint of usury. 91 C.J.S. *Usury*, Section 14, states: *"Excessive charge resulting from mistake.* Mistakes in calculation or other mistakes of fact made in good faith, resulting in the lender's unintentionally charging or receiving something in excess of what is allowed by law, negative the existence of the unlawful intent necessary to constitute usury. If the mistake is as to the legal right to require the excessive payment, which is received in good faith, there is nevertheless usury." See also, 6 Williston, *Contracts,* Section 1698; 55 Am. Jur., *Usury,* Section 35. Cf. *Restatement, Contracts,* Section 526, Special Note. We hold that the over-charge collected herein was not the result of an "error of computation," as the phrase is used in said Section 196 (C).

(b)

Much of what has been said in (a) also applies to (b), as the two questions, to a certain extent, overlap; but we think a short analysis of the statute itself, Section 196 (C), will answer this inquiry. It is an elemental proposition that the statute should be construed so as to give effect, if possible, to every word, clause and sentence therein, and so that no part will be inoperative, superfluous, void or insignificant. *Sunderland, op. cit.,* Section 4705. It will be noticed that the Section provides if "any amount in excess of the charges permitted" is "charged, contracted for, or received," except as the result of errors discussed in (a), "the contract of loan

---

tation which was not made pursuant to a regular course of dealing * * *." Code of Virginia (1950), § 6-308. Such a provision would have rendered the loan in the instant case void even if what was done were an "error of computation."

shall be void" and the licensee shall have no right to collect the principal or interest, etc. There is no mention here made about a wilful purpose to transgress the law being necessary to avoid the loan; on the contrary, there is a clear and unambiguous statement that the mere doing of the acts prohibited renders the loan void. The act then continues, "and the licensee * * * agents, and employees thereof who shall have *wilfully* and *knowingly* participated in such violation" shall be guilty of a misdemeanor. (Emphasis added.) It is obvious that if we are to adopt the construction suggested by the appellee—that, in order to avoid the loan, it must be shown that the appellee "knowingly and wilfully" transgressed the law in exacting the overcharge—we must read into the first part of the statute the words "knowingly and wilfully"; and also hold that the legislature used the phrase "except as a result of an accidental or bona fide error of computation" with no purpose in mind whatever, for it is apparent that there could never be an accidental or *bona fide* error if it were knowingly and wilfully done. Moreover, we would have to hold that "wilfully and knowingly" in the latter part of the section were used without significance; because, if the excessive amount "charged, contracted for, or received" that renders the loan void in the first part of the section had to be "knowingly and wilfully" charged, contracted for, or received, the legislature could have concluded the section by merely stating that the licensee and its employees, etc., who participated in the violation would be guilty of a misdemeanor, without the use of the words "wilfully and knowingly." It is plain that the mere charging, contracting for, or receiving of an overcharge (with the exception noted) was intended to make the loan void; but, before such charging, contracting for, or receiving of an excessive amount would constitute a crime, it must have been "wilfully and knowingly" done.

The desires of money lenders to obtain all that they can exact for the use of their money and the necessities of borrowers, especially those who require a comparatively small loan with little or no security, have perplexed the lawmakers of

the world since very early times.[3] Legislatures have frequently resorted to provisions which state that where the lender exacts amounts in excess of those permitted by law, a forfeiture of the loan results, not as a matter of compensation to the borrower, but, as pointed out above, as an aid to the enforcement of the law; and this is what was done in the enactment of Section 196 (C).

> *Judgment reversed, and case remanded for the entry of a declaratory judgment in accordance with this opinion, the appellee to pay the costs.*

---

**3.** For an interesting and instructive historical sketch of the subject, see Plitt v. Kaufman, 188 Md. 606, 610, 53 A. 2d 673, and a rather complete statement of the problems involved, see Finance Company, Inc. v. Catterton, supra, 161 Md. at page 653, 158 A. 16.