GERALD J. HEFFERNAN, TAX COMMISSIONER *v.* KENNETH J. SLAPIN, EXECUTOR (ESTATE OF BESSIE MILLER LYONS)

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued June 5—decision released August 5, 1980

*Robert H. Rubin,* for the appellant (defendant).

*Albert E. Sheary,* chief inheritance tax attorney, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Seymour M. Alpert,* first assistant commissioner of revenue services, for the appellee (plaintiff).

COTTER, C. J.   The sole issue presented by this appeal is whether an executor may utilize the hearing described in General Statutes § 12-367 (b), in

effect on February 17, 1973, to contest and alter his own appraisal of an asset reported on a duly filed succession tax return after the tax commissioner failed to object to the executor's reported appraisal pursuant to General Statutes § 12-359 (b).

The parties stipulated to the facts and those pertinent to this appeal are: The decedent, Bessie Miller Lyons, was a settlor of a trust dated September 6, 1968, involving certain real estate located in Norwalk; she died testate on February 17, 1973. In November of 1973, the executor of the decedent's estate filed the Connecticut succession tax return (form S-1), reporting the previously noted trust as item 1 on schedule 10. In the column of schedule 10 designated as "Total Value at Date of Death," the executor listed the value of the corpus of the trust as $549,300. In the adjacent column calling for concessions of taxability, the executor claimed the trust was not taxable. The tax commissioner objected to the executor's claim of nontaxability but did not object to the executor's valuation of the trust. After a hearing on the tax commissioner's objection, the Norwalk Probate Court entered a decree on May 21, 1975, holding the trust to be not taxable for Connecticut succession tax purposes. An appeal by the commissioner to the Superior Court, however, was sustained and the executor did not appeal the Superior Court's decree holding the trust to be taxable.

On June 3, 1976, the plaintiff tax commissioner computed the Connecticut succession tax based on the succession tax return as filed and included the trust estate, found taxable by the Superior Court, at the value of $549,300 placed on it by the defendant executor. The trust was added to other con-

ceded taxable property to form a gross taxable estate of slightly over $1,000,000. On June 21, 1976, the defendant filed an application under General Statutes § 12-367 for a hearing upon the computation of the tax before the Norwalk Probate Court. The executor's claim, as set forth in his application, was that the value placed on the trust in the succession tax return was excessive and that a lower figure should be used in computing the tax on the trust. After a hearing, the Probate Court entered a decree reducing the value of the trust in question for purposes of the Connecticut succession tax from $549,300 to $387,000. The tax commissioner's appeal from this decree of the Probate Court was sustained by the Superior Court, that court having concluded that the defendant was not, under § 12-367, entitled to a hearing as to the value of the trust, and it is from that judgment that this appeal by the defendant executor is taken.

## I

The present case involves solely the interpretation of §§ 12-359 (a), 12-359 (b) and 12-367 (b) of the General Statutes in effect on February 17, 1973, the date of the decedent's death. Thus, we first examine the statutory scheme in these provisions before reviewing the arguments underlying the defendant's claim that the trial court erred in sustaining the tax commissioner's appeal. See *Hopkins* v. *Pac*, 180 Conn. 474, 477, 429 A.2d 952; *Bahre* v. *Hogbloom,* 162 Conn. 549, 554-55, 295 A.2d 547.

Section 12-359 (a) of the General Statutes[1] sets forth what shall be included on the succession tax

[1] In 1973, General Statutes § 12-359 (a) read in pertinent part: "Such return shall include among other things: . . . (2) an appraisal by the fiduciary or transferee, at its fair market value on the date of decedent's death, of each item of property, the transfer

return. Section 12-359 (b) delineates the method of objecting to valuations and concessions of taxability of individual items set forth in the succession tax return and sets out the scope of the Probate Court hearing and determination on the objections.[2] Section 12-359 (b) further provides the method of determining the gross taxable estate upon which the tax computation shall be based.[3] Section 12-367 (b) in 1973 provided for an application for a hearing to challenge the tax commissioner's computation of the succession tax.[4]

---

of which may be taxable under the provisions of section 12-341, 12-341b, 12-342, 12-343, 12-345 or 12-345a; (3) a statement as to whether, or to what extent, the reported transfers are conceded taxable."

[2] In 1973, General Statutes § 12-359 (b) provided in relevant part: "Within one hundred twenty days after the receipt of such return by the tax commissioner, he may file with the fiduciary or transferee and with such court of probate a statement in writing setting forth in detail such objections as he may have to the valuations or concessions of taxability appearing thereon. . . . [T]he tax commissioner, fiduciary or transferee may file in the court of probate . . . an application for a hearing upon those items set out in such return as to which the tax commissioner objects. . . . Such court, upon such hearing, shall hear such objections and determine the fair market value of any property, the reported value of which has been objected to, and the taxability of any transfer objected to and shall enter upon its records a decree determining the fair market value of property the value of which has been objected to and the taxability of any transfer which has been objected to."

[3] In 1973, General Statutes § 12-359 (b) read in relevant part: "The value of the gross taxable estate as set forth in the tax return or as altered by written agreement between the tax commissioner and such fiduciary or transferee or as set by the probate court upon a hearing as hereinbefore provided shall be the basis for computing the succession tax."

[4] In 1973, General Statutes § 12-367 (b) provided in general part: "Within sixty days after the mailing of the computation by the tax commissioner, the fiduciary or transferee or any other party in interest may make written application to the probate court for a hearing upon the computation of the tax. Such application shall set forth in detail the objection to the computation and a copy of the same shall be mailed to the commissioner at the time of filing. The probate

## II

The defendant executor argues initially that, on its face, there is no limitation regarding the issues which may be heard in a hearing held pursuant to § 12-367 (b) and that he could raise the issue of valuation as he did before the Probate Court. This argument ignores our cardinal rule concerning statutory construction, viz.: "In the construction of . . . statutes, words and phrases shall be construed according to the commonly approved usage of the language." General Statutes § 1-1 (a). See *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 7, 434 A.2d 293; *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 423, 426 A.2d 1324. Section 12-367 (b), the words of which the defendant executor does not quote or rely on in making his claim, fails to mention or allude to valuation, concessions of taxability or the determination of the gross estate already fixed under § 12-359. Under § 12-367, a hearing is restricted to questions on the tax's "computation," an expression which is repeatedly iterated in the provision. "Compute" commonly means "to determine or ascertain esp. by mathematical means: arrive at an answer to or sum for . . . vi: to make calculations." Webster, Third New International Dictionary. See also *Goddard* v. *Shapiro Bros. Shoe Co.,* 234 A.2d 326, 330 (Me.) (computation is the act or process of computing; calculation, reckoning); *Fisher* v. *Bethesda Discount Corp.,* 221 Md. 271, 276, 157 A.2d 265 (same); *Mudd* v. *McColgan,* 174 P.2d 646, 651 (Cal. App.) (determination of a deficiency in an income tax was a "computation" of a tax within the sta-

court shall assign a time and place for a hearing upon such computation. . . . Such court shall determine that amount of such tax and shall enter upon its records a decree for such amount."

tute). Thus, the hearing appears definitely to be restricted to questions such as whether the mathematics are correct or whether a full exemption was granted. Nothing suggests that the fiduciary has an opportunity under § 12-367 (b) to question his own reported valuations.

Nonetheless, although words do not become ambiguous simply because lawyers or laymen contend for different meanings and courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it; see, e.g., *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 374, 321 A.2d 444; because the defendant contends that as a whole and as applied to the present facts the statutory scheme created by §§ 12-359 and 12-367 is confusing and ambiguous, we review his other arguments to see whether any ambiguity can reasonably be imputed to these provisions. Our further review is also impelled by the principle that statutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. *State* v. *Murtha*, 179 Conn. 463, 466, 427 A.2d 807; *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 58, 392 A.2d 491.

A

Initially in support of his claim that § 12-367 (b) permits the question of valuation to be raised at a hearing before a Probate Court, the defendant contends that the entry of $549,300 on schedule 10 of the succession tax return in question was only a pro forma informational figure which had no legal significance and was not binding on the defendant. Not only does this argument disregard the clear language of § 12-359 (a) and the defendant's actions in conformity with the directions on the succession

tax return itself, but it also fails to take into account the significance of the entry of valuation for the tax commissioner under the statutory framework created by §§ 12-359 (a) and (b).

The succession tax return utilized was in conformity with the mandatory language of § 12-359 (a), and schedule 10 of that return (where "Transfers During Decedent's Lifetime" are reported) has a column for the description of the asset, another for the valuation of the asset, and a third column for concessions of taxability concerning the asset. Thus, the succession tax return statute and the succession tax return itself clearly indicate that an asset must be reported at its fair market value, regardless of concessions of taxability which form a distinctly separate issue. As the stipulated facts reveal, the defendant executor followed both the requirements of § 12-359 (a) and the succession tax return prepared and disseminated in furtherance of the statutory directions. Finally, as the defendant himself conceded at oral argument, when the tax commissioner raised questions of taxability concerning the entries on the succession tax return under § 12-359 (b), he was also at that time bound to object to questions of valuation or forfeit the opportunity to challenge the executor's valuation. In light of the foregoing, the defendant's argument is unpersuasive that the entry of valuation on the succession tax return before the issue of taxability was finally determined was merely a pro forma matter.

## B

In conformity with the initial language of § 12-359 (b); see footnote 2; the tax commissioner objected to the defendant's claim of nontaxability

for the trust in question, but did not object to the defendant's reported appraisal of fair market value for the trust. Although the Superior Court sustained the tax commissioner's objection and held the trust to be taxable in its entirety and the defendant did not appeal to this court, he nonetheless argues that if a hearing is not permitted on valuation after the Superior Court's determination of taxability, § 12-359 (b) does not permit the addition of the trust to the decedent's taxable estate. The defendant's contention is premised on the fact that the three methods of determining the gross taxable estate for purposes of tax computation as described in § 12-359 (b); see footnote 3; do not mention explicitly adding any asset determined taxable in judicial proceedings beyond the hearing provided for in the Probate Court. Even if we assume that the defendant's construction is conceivable, it is settled that when two constructions are possible, courts will adopt that construction which makes the statutes effective and workable, and not one which would lead to difficult and unfathomable results. *Wiegand* v. *Heffernan,* 170 Conn. 567, 582, 368 A.2d 103; *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 621, 363 A.2d 1038.

The defendant's construction fails to take into account that § 12-359 (b) provides for an appeal from the Probate Court's decision and thus would make a successful appeal, as is true in this case, meaningless if the asset judged taxable in that successful appeal could not be added to the gross taxable estate. The executor's argument here also leads to another untenable conclusion in that if the tax commissioner prevails in his objection to a claim of nontaxability under § 12-359, he cannot compute the tax until the executor files a second return, setting

forth a new value or restating the old value for the asset at issue. The relevant statutes supply no support for this scenario. The only viable construction of § 12-359 (b) is the one on which the tax commissioner acted in computing the succession tax. He used the gross value as set forth in the tax return, and added to that amount only the value of the trust as set forth in the return and as determined to be taxable by the Superior Court.

## C

The defendant also contends that the 1978 alterations of § 12-367 (b) by the general assembly were intended only to clarify the allegedly ambiguous language of that provision. We do not, however, view the amendments brought about by Public Acts 1978, No. 78-195 as merely clarifying the previous language of the provision. See *Muha* v. *United Oil Co.*, 180 Conn. 720, 727, 433 A.2d 1009. As the language and the statutory history of the amendment clearly indicate, among the changes effected by the amendment is one which allows questions of valuation or of taxability to be raised by a fiduciary at the hearing provided for in § 12-367 (b). Compare *Tax Commissioner* v. *Estate of Bissell*, 173 Conn. 232, 244–45, 377 A.2d 305. This language and statutory history reinforce the presumption that amendments effect a change in existing law. *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 21 n.6, 434 A.2d 293; *Stamford* v. *Stamford*, 107 Conn. 596, 606, 141 A. 891.

Section 12-367 (b) was amended by Public Acts 1978, No. 78-195 to read in pertinent part: "Within sixty days after the mailing of the computation by the commissioner of revenue services, the fiduciary or transferee or any other party in interest may

make written application to the probate court for a hearing upon the determination of tax or the computation thereof. . . . The commissioner or any person interested may appear before such court at such hearing and be heard on any matter involved in the determination of the tax or the computation thereof, including, if no hearing has been held previously under the provisions of subsection (b) of section 12-359, . . . any matter which would have been heard at such a hearing." Thus, after Public Acts 1978, No. 78-195, the hearing under § 12-367 (b) became a forum for raising questions on the "determination of the tax" as well as on the computation of the tax. See Wilhelm, Conn. Estates Practice Death Taxes (Rev. Ed. Cum. Sup.) § 84, p. 37 ("Effective January 1, 1979, the fiduciary may at the time of objecting to the 'computation,' also raise any issues pertinent to the 'determination' of the tax which have not been raised before. Issues which may be raised include those relating to valuation, and taxability.").

The statutory history is equally clear regarding the effect of the language of Public Acts 1978, No. 78-195. While presenting the bill which became Public Acts 1978, No. 78-195, Senator George Guidera stated: "[T]his bill would make several changes in the procedures relating to the payment of succession [taxes]; . . . and generally would make those procedures less restrictive." 21 Sen. Proc., Pt. 6, 1978 Sess., p. 2442. See also 21 H. R. Proc., Pt. 5, 1978 Sess., pp. 2119-20.[5] The executor

---

[5] On the house floor, the sponsor of the bill enacted as Public Acts 1978, No. 78-195 stated in part: "The bill would provide that any item that affects the computation or determination of the tax can be raised at this final hearing provided that there has been no prior hearing in the Probate Court concerning that particular item. This is a desirable change since when the fiduciary receives the com-

cannot take advantage of the change wrought by Public Act No. 78-195. See General Statutes § 55-3. Substantive rights are affected and so the amendment at issue is to be given prospective application only. *Muha* v. *United Oil Co.,* supra, 729; *East Village Associates, Inc.* v. *Monroe,* 173 Conn. 328, 331–33, 377 A.2d 1092.

## D

The defendant's final contention is that if he is denied a hearing on the question of valuation for succession tax purposes he will be denied constitutional due process. We fail to perceive what deprivation is involved in denying the defendant a hearing on a valuation which is designated as entirely for the defendant to determine as an initial matter. It is his own action of which the defendant complains, not the lack of opportunity to be heard created by statute.[6] Compare, e.g., *Boddie* v. *Connecticut,* 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113.

---

putation of the tax this is the first official word that he has as to the amount actually owed by the estate for succession tax purposes. This is the time when the fiduciary would review his file and determine whether the tax has been correctly computed in accordance with law. If he has any disagreement with the way the tax has been computed and cannot reach a satisfactory agreement with the Tax Commissioner's office, then he should have the right within this fixed period of time to [go to] the Probate Court and have it decided before the tax becomes final. If the fiduciary has obtained any further information with respect to any estate asset such as an item being overvalued on the original return, or erroneous concession of taxability, or misdeduction, then all of these things should be able to be taken into consideration at this time so that the tax computed at this time would be accurate insofar as possible. This bill would allow for that flexibility."

[6] We note that General Statutes § 12-359 allows the fiduciary a nine-month period from the date of death, plus extensions when necessary, to arrive at his own valuations.

We have repeatedly stated that: "Where the language used by the legislature is plain and unambiguous, there is no room for construction by the courts and the statute will be applied as its words direct. *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978); *Johnson* v. *Personnel Appeal Board,* 174 Conn. 519, 521–22, 391 A.2d 168 (1978); *Clark* v. *Mulcahy,* 162 Conn. 332, 338, 294 A.2d 504 (1972)." *Muha* v. *United Oil Co.,* supra, 730–31. This was the procedure which the trial court followed.

There is no error.

In this opinion the other judges concurred.