JOHN J. HUNT, ADMINISTRATOR (ESTATE OF JAMES J.
SULLIVAN) *v.* OREST T. DUBNO, COMMISSIONER
OF REVENUE SERVICES
(2355)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued February 1—decision released April 17, 1984

*Morris L. Klein,* tax attorney, with whom, on the brief, were *Albert E. Sheary,* first assistant commissioner of revenue services, and *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*John J. Hunt,* pro se, the appellee (plaintiff).

DANNEHY, C.P.J. The stipulation of the parties discloses the following facts: On October 7, 1976, the plaintiff administrator of the estate of James J. Sullivan filed with the state tax department a succession tax return which included a parcel of land located in the city of Bridgeport with a reported fair market value of $164,000 at the time of the decedent's death. In making the valuation, the plaintiff relied upon an appraisal by a licensed real estate agent. An item on the return, unrelated to the valuation in question, was a disputed claim based on a loan which because of its doubtful nature had been assigned a value of "nil." The defendant commissioner of revenue services (commissioner) informed the plaintiff that the tax could not be computed until the disputed claim was resolved. On July 20, 1978, after the resolution of that claim, the plaintiff filed a corrected succession tax return which showed the Bridgeport property as having a fair market value of $84,000. On August 3, 1978, the commissioner filed with the Probate Court an objection to the reduced valuation and, on August 14, 1978, computed the succession tax based on the original valuation of $164,000. The plaintiff thereafter filed an objection to the use of the value of $164,000 in computing the tax.

On September 22, 1978, the Probate Court, after a hearing on the plaintiff's objection, decreed that there was no right to amend the succession tax return after it is accepted by the tax commissioner and that the commissioner's computation was correct. The plaintiff appealed to the Superior Court which sustained his appeal, finding that the taxability of the transfer should be based upon a fair market value of $84,000. The commissioner appeals[1] from that decision, claiming that the valuation in the original tax return should be used.

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

The central issues on appeal are: (1) whether §§ 12-359 (a), 12-359 (b) and 12-367 (b) of the General Statutes, in effect on February 7, 1975, the date of the decedent's death, permit the value of the lot to be altered; and (2) whether the Probate Court has the equitable power to grant the plaintiff relief, i.e., alter the reported valuation of the property in question.

I

General Statutes (Rev. to 1975) § 12-359 (a), which was in effect at the time of the decedent's death, sets forth what must be included on the succession tax return.[2] Section 12-359 (b) defines the gross taxable estate upon which the computation is based[3] and sets forth the procedure by which objections to valuations and concessions of taxability may be raised.[4] Section

[2] General Statutes (Rev. to 1975) § 12-359 (a) provides in relevant part: "Such return shall include among other things . . . (2) an appraisal by the fiduciary or transferee, at its fair market value on the date of decedent's death, of each item of property, the transfer of which may be taxable under the provisions of sections 12-341, 12-341b, 12-342, 12-343, 12-345 or sections 12-345b to 23-345e, inclusive . . . ."

[3] General Statutes (Rev. to 1975) § 12-359 (b) provides in relevant part: "The value of the gross taxable estate as set forth in the tax return or as altered by written agreement between the tax commissioner and such fiduciary or transferee or as set by the probate court upon a hearing as hereinbefore provided shall be the basis for computing the succession tax."

[4] General Statutes (Rev. to 1975) § 12-359 (b) provides in relevant part: "Within one hundred twenty days after the receipt of such return by the tax commissioner, he may file with the fiduciary or transferee and with such court of probate a statement in writing setting forth in detail such objections as he may have to the valuations or concessions of taxability appearing thereon . . . . [T]he tax commissioner, fiduciary or transferee may file in the court of probate . . . an application for a hearing upon those items set out in such return as to which the tax commissioner objects . . . . Such court, upon such hearing, shall hear such objections and determine the fair market value of any property, the reported value of which has been objected to, and the taxability of any transfer objected to and shall enter upon its records a decree determining the fair market value of property the value of which has been objected to and the taxability of any transfer which has been objected to."

12-367 (b) provides for an application for a hearing to challenge the tax commissioner's computation of the succession tax.[5]

The commissioner argues that this issue was dispositively treated in *Heffernan* v. *Slapin,* 182 Conn. 40, 438 A.2d 1 (1980). We agree. The sole question in that case was "whether an executor may utilize the hearing described in General Statutes § 12-367 (b), in effect on February 17, 1973,[6] to contest and alter his own appraisal of an asset reported on a duly filed succession tax return after the tax commissioner failed to object to the executor's reported appraisal pursuant to General Statutes § 12-359 (b)." (Footnote added.) Id., 41-42. The court in *Slapin* carefully examined §§ 12-359 (a), 12-359 (b) and 12-367 (b) and found that a hearing under § 12-367 (b) is restricted to questions on the tax's computation. It stated that "[n]othing suggests that the fiduciary has an opportunity under § 12-367 (b) to question his own reported valuations." Id., 46.[7]

---

[5] General Statutes (Rev. to 1975) § 12-367 (b) provides in relevant part: "Within sixty days after the mailing of the computation by the tax commissioner, the fiduciary or transferee or any other party in interest may make written application to the probate court for a hearing upon the computation of the tax. Such application shall set forth in detail the objection to the computation and a copy of same shall be mailed to the commissioner at the time of filing. The probate court shall assign a time and place for a hearing upon such computation . . . . Such court shall determine the amount of such tax and shall enter upon its records a decree for such amount."

[6] The statutory sections discussed in *Heffernan* v. *Slapin,* 182 Conn. 40 438 A.2d 1 (1980), and those in issue in this case, i.e., those in effect on February 7, 1975, are essentially the same.

[7] Section 12-367 (b) has since been amended to allow the fiduciary to raise at the time of objection to the "computation" any issues pertinent to the determination of the tax which have not been raised before. The amended section; see Public Acts 1978, No. 78-195, § 2 (b); reads in pertinent part: "The commissioner or any person interested may appear before such court at such hearing and be heard on any matter involved in the determination of the tax or the computation thereof, including, if no hearing has been held previously under the provisions of subsection (b) of section

The plaintiff acknowledges the outcome in *Slapin* and contends that he is relying not on § 12-367 (b), but on § 12-359 (b). That section allows the tax commissioner to file objections to the valuations or concessions of taxability in the return within one hundred and twenty days of filing; permits the commissioner, fiduciary or transferee to apply for a hearing before the Probate Court on those items to which the commissioner objects; and authorizes the Probate Court to determine the fair market value of any property of which the value is in dispute. The commissioner, however, never objected to the valuation of $164,000 which appeared on the return the plaintiff duly filed on October 7, 1976. Hence, the initial requirement of § 12-359 (b) was never met and the hearing provision was never applicable. In any event, no authority, either in the statutes or case law, supports the notion that § 12-359 (b) was intended to allow a fiduciary to utilize the hearing procedure established therein as a vehicle for the rectification of such errors.

In an appeal from a probate order or decree, the Superior Court does not exercise its general jurisdiction but exercises the powers of the probate court from which the appeal was taken. "The probate court is a court of limited jurisdiction and has only such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers." *Prince* v. *Sheffield,* 158 Conn. 286, 293–94, 259 A.2d 621 (1969). The trial court, which found that § 12-359 (b) does allow the plaintiff to alter the valuation gratuitously, enlarged those powers by dispensing with the requirement of an objection by the tax commissioner as a prerequisite to a hearing. This cannot be condoned.

12-359 . . . any matter which could have been heard at such a hearing." The plaintiff cannot take advantage of the change brought by Public Act No. 78-195. This amendment did not become effective until January 1, 1979, and was intended to apply prospectively only. See *Heffernan* v. *Slapin,* 182 Conn. 40, 49-51, 438 A.2d 1 (1980).

## II

The plaintiff also argues that the lower valuation entered by the trial court must be upheld because the court correctly used its equitable power to grant relief from the consequences of mistake. To the extent that the Probate Court may enforce equitable rights, the Superior Court, on appeal from probate, may also enforce equitable rights. 1 Locke & Kohn, Conn. Probate Practice § 215. "Equity," however, in the sense of the judge's private impression of justice, is insufficient. *Bailey* v. *Strong,* 8 Conn. 278 (1830); 4 Wilhelm & Folsom, Conn. Estates Practice § 59.

Exceptional circumstances may exist in which the court will consider an equitable attack on a probate order or decree. *Reynolds* v. *Owen,* 34 Conn. Sup. 107, 114, 380 A.2d 543 (1977). The Superior Court "may, *in proper cases,* grant relief against decrees of the Probate Court procured by fraud, accident, mistake and the like." (Emphasis added.) *Haverin* v. *Welch,* 129 Conn. 309, 316, 27 A.2d 791 (1942); *Phinney* v. *Rosgen,* 162 Conn. 36, 42, 291 A.2d 218 (1971). We do not believe that this is such a case.

Section 12-359 (a) of the General Statutes clearly sets forth what must be entered on the succession tax return. Further, the tax return itself contains directions which mirror the mandatory language of the statute. The portion of the return in which "Real Property Not Owned in Survivorship" is reported, has one column in which the asset is to be described, a second column in which the assessed value is to be entered and a third column wherein the party filing the return is to set out the fair market value. As the stipulated facts reveal, the plaintiff relied upon an appraisal by the licensed real estate agent of the value of the property at the time of the decedent's death. This value,

$164,000, was properly entered on the return which was duly filed on October 7, 1976, within the nine month filing period prescribed in § 12-359 (a). It is clear that the plaintiff comprehended what he was doing when he filed the original return. We, therefore, do not find the exceptional circumstances which would support an equitable attack upon the findings of the Probate Court.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.