TIMOTHY F. BANNON, COMMISSIONER OF REVENUE SERVICES *v.* SAMUEL SCHWARTZ, EXECUTOR (ESTATE OF ANNA G. SCHWARTZ) (13884)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued May 10—decision released July 17, 1990

634

*Maurice J. Sturm,* tax attorney II, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Albert E. Sheary,* first assistant tax commissioner, for the appellant (plaintiff).

*Jonathan J. Klein,* for the appellee (defendant).

CALLAHAN, J. The sole issue presented by this appeal is whether an executor's characterization of a right to withdraw trust principal in his calculation of the succession tax is a "valuation" or "concession of taxability" to which the commissioner of revenue services is required to object under General Statutes § 12-359 (b).[1]

---

[1] General Statutes § 12-359 (b) provides: "HEARING ON OBJECTIONS OF COMMISSIONER OF REVENUE SERVICES. Within one hundred twenty days after the receipt of such return, or any amendment thereto, the commissioner of revenue services shall file with the fiduciary or transferee and with such court of probate a statement in writing setting forth in detail such objections as he may have to the valuations or concessions of taxability appearing thereon. Unless such fiduciary or transferee concedes the correctness of the commissioner of revenue services' opinion or the commissioner of revenue services withdraws his objection, the commissioner of revenue services, fiduciary or transferee may file in the court of probate for the district within which the transferor resided at the date of his death or, if the transferor died a nonresident of this state, in the court of probate for the district within which the real estate or tangible personal property is situated, an application for a hearing upon those items set out in such return as to which the commissioner of revenue services objects. Such court shall assign a time and place for a hearing upon the commissioner of revenue services' objections to the return or amendment thereto and shall cause a copy of the order of hearing to be sent to the commis-

The Probate Court held that since the plaintiff, the commissioner of revenue services for the state of Connecticut (commissioner), had not filed an objection to the succession tax return of the defendant executor, the commissioner was required to accept the defendant's treatment of the right to invade the trust principal as nontaxable in calculating the succession tax. On appeal to the Superior Court, the court granted the defendant's motion for summary judgment, concluding that as a matter of law the commissioner had failed to comply with the provisions of § 12-359 (b). The commissioner appealed to the Appellate Court, and we transferred the matter to this court pursuant to Practice Book § 4023. Because we conclude that the commissioner was not required to comply with § 12-359 (b) under the circumstances of this case, we reverse the judgment of the Superior Court.

sioner of revenue services, such fiduciary or transferee and all other parties in interest at least fifteen days before the time of such hearing. The commissioner or any other party in interest may appear before such court at such hearing and be heard concerning the objections of the commissioner of revenue services. If there is no appearance on behalf of the commissioner and it appears to the court that his position with respect to any matter in dispute ought not to be sustained, such hearing shall be adjourned for not less than ten days and notice of the time and place of such adjourned hearing shall be given to the commissioner, who may appear and be heard thereon. At such hearing, or adjournment thereof, the court shall hear such objections and determine the fair market value of any property, the reported value of which has been objected to, and the taxability of any transfer objected to and shall enter upon its records a decree determining the fair market value of property the value of which has been objected to and the taxability of any transfer which has been objected to. The decree of such court shall be conclusive upon the state and all other parties in interest unless an appeal is taken as provided for appeals from other decrees and orders of such court. A copy of such decree shall be forwarded forthwith to the commissioner and to the fiduciary or transferee by the judge or clerk of such court. The value of the gross taxable estate as set forth in the tax return or any amendment thereof, or as altered by written agreement between the commissioner of revenue services and such fiduciary or transferee or as set by the probate court upon a hearing under this subsection or under subsection (b) of section 12-367 shall be the basis for computing the succession tax."

The facts are not in dispute. The decedent, Anna G. Schwartz, a resident of Trumbull, died on February 18, 1987. The Probate Court for the district of Trumbull appointed the defendant, Samuel Schwartz, the decedent's husband, to serve as the executor of her will. The defendant executor filed a succession tax return with the Probate Court, which received a certified copy of the return on April 11, 1988. Upon filing the return, the defendant paid the commissioner $28,733.38, the amount of the succession tax and related interest due according to the defendant's calculations. On October 12, 1988, the commissioner computed and assessed the succession tax in accordance with General Statutes § 12-367 (a)[2] and mailed the computation and assessment to the defendant. The commissioner's assessment reported a balance due of $12,597.21.[3]

---

[2] General Statutes § 12-367 (a) provides: "COMPUTATION AND ASSESSMENT OF TAX; OBJECTIONS THERETO. REFUND OF OVERPAYMENT. WHEN AMENDMENT TO RETURN NOT REQUIRED. (a) The tax imposed by the provisions of this chapter shall be computed and assessed by the commissioner of revenue services. If the commissioner of revenue services has not filed an objection to the valuations or concessions of taxability appearing on the return as provided in section 12-359, he shall, within one hundred twenty days of his receipt of the return required by the provisions of said section 12-359, if such return is correctly made out, or if he has filed such objection, within sixty days of his withdrawal of such objection or within sixty days of a final determination by the probate court of such objection, prepare a computation of the tax and, if the tax due is found to be ten dollars or more, file a copy thereof with the court of probate and mail a copy to the fiduciary or transferee, as the case may be."

[3] The underlying dispute over the taxability of the right to invade the trust principal accounts for only a small portion, if any, of this amount. It appears that most or all of this assessment for unpaid succession tax arose from the defendant's incorrect use of succession tax rates applicable to estates of decedents whose death occurred between July 1, 1987, and June 30, 1988, rather than the rates applicable to estates of decedents whose death occurred between July 1, 1986, and June 30, 1987. Since neither party noted this error either in their briefs or at oral argument, we need not address this matter.

Article four of the decedent's will provided for the creation of a trust under which net income was to be paid to her husband on a monthly basis. Her husband was also given the right to withdraw $5000 from the trust principal each year, provided that he request such a withdrawal within the first three months of the calendar year. Upon the death of her husband, the trust corpus was to pass to the decedent's son.

In a cover letter accompanying the succession tax return, the defendant outlined his calculation of the succession tax. Since the succession tax rates vary based on the relationship of the beneficiary to the decedent and the amount of property transferred,[4] the executor had to allocate the value of the trust ($500,000) between the Class AA lifetime beneficiary (the husband) and the Class A residuary beneficiary (the son) in order to calculate the succession tax.

The commissioner and the defendant agree that the value of the husband's life interest in the net income of the trust is taxable at Class AA rates applicable to spouses of decedents. They disagree, however, over the proper treatment of the defendant's right to invade the trust principal in calculating the succession tax. In his calculation of the succession tax for the husband, the defendant did not include any amount related to the right to invade the trust principal because the defendant did not consider that right to be taxable to the husband. In the commissioner's calculation of the succession tax, however, the value of the husband's interest in the trust includes both the value of his life interest in the net income of the trust and the value of his right to invade the trust principal.

---

[4] General Statutes §§ 12-344, 12-344a, and 12-344b set forth the rates applicable to the various classes of beneficiaries. The defendant, as a surviving spouse, is a Class AA beneficiary, while the son is a Class A beneficiary.

The defendant applied for a hearing before the Probate Court pursuant to § 12-359 (b) in order to settle the question of the treatment to be accorded the right to invade the trust principal. The Probate Court concluded that because the commissioner had failed to file an objection to the defendant's succession tax return pursuant to § 12-359 (b), he could not contest the defendant's position that the right to withdraw trust principal was not taxable to the husband.[5] On appeal to the Superior Court, the court granted the defendant's motion for summary judgment because it likewise concluded that the commissioner had forfeited his right to challenge the defendant's treatment of the right to invade trust principal by failing to make a timely objection under § 12-359 (b).

Before reviewing the parties' arguments concerning the proper interpretation of § 12-359 (b), we must provide a brief background on the Connecticut succession tax. "An inheritance or succession tax is a tax imposed on the privilege of receiving property from a decedent at death." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 238, 377 A.2d 305 (1977). General Statutes § 12-359 (a)[6] outlines the information that the taxpayer

---

[5] Because the Probate Court found that the commissioner had failed to comply with General Statutes § 12-359 (b), the Probate Court did not decide the underlying substantive issue of whether this right to withdraw trust principal is taxable to the defendant. This substantive issue is not before this court.

[6] General Statutes § 12-359 provides: "REPORTS OF REPRESENTATIVES OF TRANSFERORS. (a) SUCCESSION TAX RETURNS AND AMENDMENTS THERETO. Except as herein provided, within nine months after the death of the transferor the administrator, executor, administrator for tax purposes, administrator c.t.a. or administrator d.b.n. or administrator d.b.n., c.t.a. or, if there is no such fiduciary, any transferee of property, the transfer of which may be taxable under the provisions of section 12-341, 12-341b, 12-342, 12-343, 12-345 or sections 12-345b to 12-345e, inclusive, shall file with the court of probate for the district within which the transferor resided at the date of his death or, if the transferor died a nonresident of this state, with the court of probate for the district within which the real estate or tangible personal property is situated, a sworn return, in duplicate, con-

must provide on the succession tax return. "Section 12-359 (b) delineates the method of objecting to valuations and concessions of taxability of individual items set forth in the succession tax return and sets out the scope of the Probate Court hearing and determination on the objections. Section 12-359 (b) further provides the method of determining the gross taxable estate

taining all items necessary to the correct computation and assessment of the tax. Such return shall include among other things: (1) A copy of the written instrument evidencing any transfer which may be taxable under the provisions of subsection (c) or (d) of section 12-341 or 12-341b or of section 12-342, 12-343, 12-345 or sections 12-345b to 12-345e, inclusive, or, if there is no written evidence, a written statement fully disclosing the circumstances under which the transfer was made; provided, in the case of a transfer evidenced by an insurance, annuity, pension plan, profit-sharing plan or other similar contract with an insurance company, in lieu of such copy of the written instrument, a summary thereof may be so filed; (2) an appraisal by the fiduciary or transferee, at its fair market value on the date of decedent's death, of each item of property, the transfer of which may be taxable under the provisions of section 12-341, 12-341b, 12-342, 12-343, 12-345 or sections 12-345b to 12-345e, inclusive; (3) a statement as to whether, or to what extent, the reported transfers are conceded taxable; (4) all items claimed as deductions under the provisions of section 12-350 or 12-352, with an explanation of the circumstances under which each deduction is allowable; (5) a statement containing the name and relationship to the transferor of each individual, corporation, institution, society, association or trust benefiting by reason of any succession or transfer of property as set forth in sections 12-340 to 12-343, inclusive, sections 12-345 and 12-345b to 12-345e, inclusive, and the value of the estate passing to each such beneficiary; (6) such other information as the commissioner of revenue services may deem necessary for the correct computation and assessment of the tax and the proper administration thereof. The fiduciary or transferee may correct any item on the succession tax return by filing with the probate court an amendment thereto in duplicate, sworn to as the original return, containing such changes in the return as the fiduciary desires to make, but no such amendment shall be permitted which would change the reported value of any property or withdraw a concession of taxability after a hearing has been held thereon pursuant to the provisions of subsection (b) of this section and no such amendment shall be permitted after the computation of the tax has become final. The probate court shall, within ten days of the filing of such return or an amendment thereto, forward a certified copy thereof to the commissioner of revenue services. The commissioner of revenue services shall acknowledge receipt thereof to the probate court and the fiduciary or transferee."

upon which the tax computation shall be based." *Heffernan* v. *Slapin,* 182 Conn. 40, 44, 438 A.2d 1 (1980). If the commissioner fails to file an objection under § 12-359 (b) to "valuations" or "concessions of taxability" in the taxpayer's succession tax return, he forfeits the right to challenge the taxpayer's treatment of the "valuation" or "taxability" issue in calculating the succession tax. Id., 47. Section 12-367 (a) requires the commissioner of revenue services to compute and assess the succession tax, while § 12-367 (b)[7] provides

---

[7] General Statutes § 12-367 (b) provides: "Within sixty days after the mailing of the computation by the commissioner of revenue services, the fiduciary or transferee or any other party in interest may make written application to the probate court for a hearing upon the determination of the tax or the computation thereof. Such application shall set forth in detail the objection to the determination or computation of the tax and a copy of same shall be mailed to the commissioner at the time of filing. The probate court shall assign a time and place for a hearing upon such application not less than two nor more than four weeks after receipt thereof and shall cause a copy of the order of hearing to be sent to the commissioner of revenue services and to the fiduciary or transferee and to all other parties in interest at least ten days before the time of such hearing. The commissioner or any person interested may appear before such court at such hearing and be heard on any matter involved in the determination of the tax or the computation thereof, including, if no hearing has been held previously under the provisions of subsection (b) of section 12-359, any matter which could have been heard at such a hearing. If there is no appearance on behalf of the commissioner and it appears to the court that such computation ought to be modified, such hearing shall be adjourned for not less than ten days and notice of the time and place of such adjourned hearing and of any proposed change in such computation shall be given to the commissioner, who may appear and be heard thereon. At such hearing, or adjournment thereof, the court shall determine all matters properly before it, including the amount of such tax and shall enter upon its records a decree for such amount. A copy of the decree of the probate court shall be forwarded forthwith to the commissioner and the fiduciary or transferee by the judge or clerk of such court. Subject only to the provisions of subsection (d) of this section, the computation of the tax by the commissioner of revenue services shall be conclusive upon the state and all persons interested unless a hearing is held thereon as herein provided, in which case the decree of the probate court shall be conclusive upon the state and all persons interested unless an appeal is taken as provided for appeals from other decrees and orders of such court."

the taxpayer with the right to a hearing before the Probate Court to challenge the commissioner's computation of the succession tax.

The defendant argues that his characterization of the right to invade trust principal as nontaxable in calculating the succession tax is a claim of nontaxability to which the commissioner was required to object under the "concessions of taxability" language of § 12-359 (b).[8] The commissioner claims, to the contrary, that the defendant's treatment of the right to invade trust principal as nontaxable for succession tax purposes is neither a "valuation" nor a "concession of taxability" within the meaning of these terms in § 12-359 (b), and that the commissioner therefore was not required to file an objection under § 12-359 (b) in order to challenge the defendant's treatment of this right as nontaxable. The commissioner argues that the terms "valuations" and "concessions of taxability" apply only to valuation or taxability issues that affect the determination of the amount of the net taxable estate,[9] and do not apply to issues that affect only the rate of taxation of property which the taxpayer has included in the gross taxable estate at a value that is

---

[8] The defendant also claims that this court cannot reverse the ruling of the trial court unless we find that the Superior Court was clearly erroneous in ruling that the defendant treated the right to invade trust principal as nontaxable. Although it is true that the clearly erroneous standard is applicable when a factual finding of the trial court is challenged; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); there is no issue of fact in this case. The Superior Court's determination that the defendant did not concede the taxability of the right to invade trust principal is relevant only if this taxability issue is one that falls within the meaning of "concessions of taxability" in General Statutes § 12-359 (b).

[9] On Schedule 3 (Summary of Taxable Estate) of the defendant's succession tax return, the defendant was required to provide the amount of various types of property included in the gross taxable estate. These amounts are listed in a column labeled "value or amount conceded taxable." The net taxable estate is determined by subtracting from the gross taxable estate deductions for expenses such as attorneys' fees, funeral expenses, and debts of the deceased. See General Statutes § 12-350.

not challenged by the commissioner. Because he had no objection to the amount the defendant reported as the net taxable estate, the commissioner asserts that he had no objection to any "valuations" or "concessions of taxability" as those terms are used in § 12-359 (b).

The basic goal of statutory construction is to determine and give effect to the apparent intent of the legislature. *Ruskewich* v. *Commissioner of Revenue Services,* 213 Conn. 19, 23–24, 566 A.2d 658 (1989); *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987). " 'In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment [and] to the legislative policy it was designed to implement . . . .' [*Texaco Refining & Marketing Co.* v. *Commissioner,* supra]; *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128, 527 A.2d 672 (1987); *Kellems* v. *Brown,* 163 Conn. 478, 502–503, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973)." *Ruskewich* v. *Commissioner of Revenue Services,* supra, 24. "A succession tax statute must be construed as a whole; its various provisions are in pari materia and must be construed together so as to carry out the intent of the legislature." *Tax Commissioner* v. *Estate of Bissell,* supra, 245–46; see *Ruskewich* v. *Commissioner of Revenue Services,* supra, 25.

Section 12-359 (a) requires that "an appraisal by the fiduciary or transferee, at its fair market value on the date of decedent's death, of each item of property, the transfer of which may be taxable . . . [and] a statement as to whether, or to what extent, the reported transfers are conceded taxable" be included in the succession tax return. Pursuant to § 12-359 (b) the commissioner is required to file within one hundred twenty days of receiving the succession tax return "a statement in writing setting forth in detail such objections

as he may have to the *valuations* or *concessions of taxability* appearing [on the succession tax return]." (Emphasis added.) Section 12-359 (b) further provides that "[t]he value of the gross taxable estate as set forth in the tax return or any amendment thereof, or as altered by written agreement between the commissioner of revenue services and such fiduciary or transferee *or as set by the probate court upon a hearing under this subsection* or under subsection (b) of section 12-367 shall be the basis for computing the succession tax." (Emphasis added.)

This final sentence establishes that the primary purpose of a hearing under § 12-359 (b) is to resolve disagreements between the taxpayer and the commissioner over "valuations" or "concessions of taxability" that affect the value of the gross taxable estate. This court has recognized that § 12-359 (b) provides a procedure for determining the value of the gross taxable estate when this amount is in dispute. *Heffernan* v. *Slapin,* supra, 44. If, for instance, the commissioner and the taxpayer disagree over the fair market value of real property included in the gross taxable estate; see, e.g., *Hunt* v. *Dubno,* 1 Conn. App. 529, 473 A.2d 1235 (1984); or over whether the assets of a trust are subject to the succession tax; see, e.g., *Heffernan* v. *Slapin,* supra; the commissioner must then file an objection under § 12-359 (b) in order to challenge the taxpayer's characterization of these issues of "valuation" and "taxability."

The defendant argues that the question of how to treat the right to invade the trust principal for succession tax purposes involves a question of the taxability of the invasion power and that § 12-359 (b) required the commissioner to object to his treatment of the power as nontaxable if he wished to impose a tax. This argument fails to recognize that, because the primary purpose of a hearing under § 12-359 (b) is to resolve

differences as to the value of the gross taxable estate, "valuations" or "concessions of taxability" within the meaning of § 12-359 (b) refer only to those valuations or concessions of taxability that affect the amount a taxpayer reports as the gross taxable estate.[10] The parties agree that the entire value ($500,000) of the trust assets is taxable for succession tax purposes. The succession tax treatment of the defendant's right to invade the trust principal affects only the allocation of the net taxable estate between the Class AA beneficiary (the husband) and the Class A beneficiary (the son).[11] As a result, it affects only the rate at which the trust assets are taxable, and not the amount of the estate subject to the imposition of a succession tax.

The defendant's interpretation of § 12-359 (b) is inconsistent with other succession tax provisions embodied in the statutes. "[S]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. *State* v. *Murtha,* 179 Conn. 463, 466, 427 A.2d 807 [1980]; *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491 [1978]." *Heffernan* v. *Slapin,* supra, 46.

Section 12-367 (a) provides that "[t]he tax imposed by the provisions of this chapter shall be computed and assessed by the commissioner of revenue services." The rate of the Connecticut succession tax is based on both the value of property transferred and the identity of the persons receiving the property. General Statutes

---

[10] We need not decide, on the present record, whether the reported amounts of the various deductions from the gross taxable estate under General Statutes § 12-350 are "valuations" or "concessions of taxability" within the meaning of General Statutes § 12-359 (b). It is sufficient for this case to hold that the commissioner need not object under § 12-359 (b) when he does not dispute the amount reported as the gross taxable estate.

[11] By treating the right to invade the trust principal as not taxable, the defendant allocated a greater portion of the trust to the son and a lesser portion to himself than the commissioner did.

§ 12-344 (a); *Tax Commissioner* v. *Estate of Bissell,* supra, 237. Determining the allocation of the net taxable estate between the various classes of beneficiaries is thus a necessary step in the process of computing the succession tax. G. Wilhelm, Connecticut Estates Practice Death Taxes (2d Ed.) § 80, pp. 178–80.

In *Tax Commissioner* v. *Estate of Bissell,* supra, 235–36, this court faced the issue of determining the proper allocation for succession tax purposes of a marital deduction trust as between the Class A and Class AA beneficiaries. Noting that the real issue concerned the *rate* of taxation, the court characterized the issue as involving a question of "the correctness of [the commissioner's] computation." Id., 236.

Since the question of the taxability of the right to invade the trust principal affects only the rate of the succession tax, and not the taxability of the trust assets, and since the determination of the appropriate rate is an integral part of the process of computing the succession tax, the defendant's interpretation of § 12-359 (b) would require the commissioner to file an objection to an issue that arises only at the time of computation of the tax. This interpretation is not consistent with the fact that § 12-367 (a) places the duty of computing the succession tax upon the commissioner, not the taxpayer.[12] "[I]t is settled that when two constructions [of a statute] are possible, courts will adopt that construction which makes the statutes effective and workable, and not one which would lead to difficult and unfathomable results. *Wiegand* v. *Heffernan,* 170 Conn. 567, 582, 368 A.2d 103 [1976]; *Atwood* v.

---

[12] Although it is true that the taxpayer must make a preliminary calculation of the succession tax since the succession tax is due when the return is filed; G. Wilhelm, Connecticut Estates Practice Death Taxes (2d Ed.) § 80, p. 180; this calculation is not binding on the commissioner since it is the commissioner who has official responsibility for calculating the succession tax under General Statutes § 12-367 (a).

*Regional School District No. 15,* 169 Conn. 613, 621, 363 A.2d 1038 [1975]." *Heffernan* v. *Slapin,* supra, 48.

Our interpretation of § 12-359 (b) does not leave an executor or administrator in the defendant's position without a remedy. Section 12-367 (b) gives a fiduciary, transferee, or any other party in interest the right to a hearing in the Probate Court if such person files a timely objection to the commissioner's computation of the succession tax.

The judgment of the Superior Court is reversed and the case is remanded to that court with direction to sustain the appeal and remand the case to the Probate Court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.