STATE OF CONNECTICUT *v.* DONALD COUTURE

FILE No. 1126

STATE OF CONNECTICUT *v.* LAWRENCE J. PELLETIER, JR.

FILE No. 1125

APPELLATE SESSION OF THE SUPERIOR COURT

Argued April 27 – decided May 26, 1981

*Ralph G. Elliot,* for the petitioner, The Hartford Courant Company.

*John R. Williams,* for the defendant in the first case, Donald Couture.

*Raymond J. Quinn, Jr.,* public defender, for the defendant in the second case, Lawrence J. Pelletier, Jr.

*Francis M. McDonald, Jr.,* state's attorney, for the state.

SHEA, J.   The petitioner publishes a daily newspaper with a large circulation throughout most of the state and it has appealed pursuant to General Statutes § 51-164x from an order of the trial court closing the courtroom to the press and the public during certain proceedings preliminary to the trial of the two defendants upon charges of capital felony and felony murder.  The crimes charged involve the killing of three security guards during a robbery at the

Purolator garage in Waterbury on April 16, 1979. The defendants had moved to exclude the public and the news media from the hearings on their motions to suppress certain evidence which they claimed to be inadmissible. After lengthy arguments in which the state and the petitioner opposed the closure motion of the defendants, the trial court granted the motion in respect to the hearings on the suppression of some of the evidence described in a certain memorandum filed by the defendants. Closure was denied in respect to two portions of the memorandum (Parts V and X) referring to the same matters as those mentioned in other parts. It was also denied in respect to another portion (Part VIII) raising issues which could be submitted in briefs. It appears that the closure order will affect only the evidentiary aspect of the hearings on the suppression of various tangible and documentary evidence claimed to have been unlawfully seized, a remark allegedly made during the course of a search, and certain identification testimony. The trial court, indicating its intention to invoke closure as narrowly as possible consistent with the rights of the defendants to a fair trial, mentioned that its order would be subject to modification or termination during the progress of the hearings, and stated that a transcript of the closed proceedings would be made available as soon as the right of fair trial would not be jeopardized.

The closure order was made after a hearing in which the attorney for the petitioner was allowed to participate. Testimony was presented concerning the extent of publicity given to the crimes charged against the defendants, the circulation figures and distribution areas of newspapers published in Waterbury, New Haven and Hartford, including the petitioner's newspaper and the broadcast coverage of three television stations and one radio station. All of these news media had given substantial publicity to the cases, and their representatives testified also to

their intentions of having reporters cover all court proceedings. It is undisputed that the case has received widespread publicity throughout Connecticut, although the extent of publicity has been far less in the Stamford and New London areas than in communities closer to Waterbury. The nature of the charges, involving multiple killings and the claimed applicability of the death penalty, would account for the exceptional amount of publicity generated and also would indicate the likelihood of similar publicity during future court proceedings.

The same evidence concerning publicity was utilized in connection with a motion of the defendants for a change of venue, in which the defendants suggested that the cases be transferred to New London or Stamford where the extent of publicity has not been so great. The court denied this motion, concluding that a fair trial could still be had in Waterbury despite the great publicity about the charges in that area. Practice Book § 835.

It appears that in considering the motions for closure the trial court was attempting to follow our recent decision in *State* v. *Burak,* 37 Conn. Sup. 627, 431 A.2d 1246 (1981), in which we held that the standard to be followed in deciding whether a pretrial suppression hearing should be closed is whether the moving party has sustained the burden of proving that "a fair trial for the defendant is likely to be jeopardized by publicity" unless the courtroom is closed to the press and public. *Gannett Co., Inc.* v. *DePasquale,* 443 U.S. 368, 400, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979) (Powell, J., concurring). We refused to apply the more rigid standards for allowing closure of the actual trial of a case which may be implied by *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). The trial court, nevertheless, did consider whether there were any "manageable" alternatives to closure, as suggested in

*Richmond.* The specific alternatives set forth in the opinion of Justice Blackmun in *Gannett* to be reviewed by a court before ordering closure were carefully examined: "continuance, severance, change of venue, change of venire, voir dire, peremptory challenges, sequestration, and admonition of the jury." *Gannett Co., Inc.* v. *DePasquale,* supra, 441 (Blackmun, J., dissenting in part). All of them were found to be ineffective in safeguarding the defendants' right of fair trial.

In this appeal the petitioner does not dispute that the case has received and will continue to receive an exceptionally high level of publicity as a multiple murder case in which the prosecution seeks the death penalty. It claims that extensive publicity does not necessarily mean the defendants will be prejudiced. We agree that it is the prejudicial nature of the publicity and not merely its extent which would support a closure order. See *Murphy* v. *Florida,* 421 U.S. 794, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975). It is clear, however, that the evidence which the defendants here seek to suppress would not be admissible at the trial if their contentions concerning the manner in which it was obtained prove to be correct. Without detailing the matters which are the subject of the motions to suppress, they appear to be generally similar to the evidence mentioned in *Gannett,* which was deemed to present an appropriate occasion for invoking closure. It is a fair conclusion from our review of the summary of this evidence in the defendants' memorandum that its public disclosure would be likely to prejudice the general public, including prospective jurors.

In denying the motion for a change of venue, the trial court made several findings in support of its conclusion that a fair trial could be held in Waterbury which the petitioner claims are inconsistent with its findings in granting closure. We can see no such in-

consistency. In deciding that the publicity had not been so intense as to preclude a fair trial in Waterbury the court was considering primarily the extent of the publicity which had been generated in the past. In deciding the closure motion the primary concern is the prejudicial nature of future publicity which might be given to matters which may eventually be excluded at a trial. It is entirely reasonable for the court to have concluded that a fair trial was possible in Waterbury but that it would become impossible if the matters sought to be suppressed were widely publicized before trial.

The petitioner also disagrees with the trial court's evaluation of the effectiveness of the various alternatives to closure which were considered by the trial court. The proposal for a change of venue undoubtedly had some merit, but the lesser degree of past publicity about the case in the two areas of the state suggested was a condition which might well change once it was known that the trials would be held in those communities. Extensive voir dire examination, which the court noted to be our practice, is not an absolute guaranty that persons consciously or unconsciously prejudiced by the news media will not be selected as jurors. A defendant in a criminal case ought not to have jury selection confined to people who do not read newspapers or are not otherwise exposed to current events. The alternative mentioned by the court in *State* v. *Burak,* supra, of simply referring to the evidence in question without revealing its content was considered but found to be impractical for evidentiary hearings such as these where witnesses could probably not avoid disclosing the matters at issue in the course of their testimony. Another assertion of the petitioner, that the matters which are the subject of the suppression hearings have already been publicized, is not supported by our examination of the record. The judgment of the trial court on

these matters carries the weight ordinarily given to the determination of essentially factual issues. We conclude that there was sufficient support for the order of closure entered by the trial court.

There is no error.

In this opinion DALY and BIELUCH, Js., concurred.