STATE OF CONNECTICUT *v.* ANONYMOUS (1984–2)*

SUPERIOR COURT

Decided June 20, 1984

HENDEL, J. The defendant was charged with the crime of murder in violation of General Statutes §§ 53a-54a and 53a-8. In accordance with the provisions of Public Acts 1983, No. 83-210, § 1,[1] this court held

---

\* Thus entitled in view of the spirit and intent of General Statutes § 54-142a.

[1] Public Acts 1983, No. 83-210, § 1, provides:

"(a) No person charged by the state on or after the effective date of this act shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving

a hearing to determine whether "there is probable cause to believe that the offense charged has been committed and that the accused person has committed it." At the hearing a statement made by the defendant to the police concerning the factual circumstances surrounding the incident in question was offered in evidence. The defendant objected to the admission of the statement and requested the opportunity to move to suppress the statement and to have an evidentiary hearing on the voluntariness of the statement. The court overruled the defendant's objection and denied his request pursuant to the specific provision of Public Acts 1983, No. 83-210, § 1 (b), that "[n]o motion to suppress . . . shall be allowed in connection with such hearing." The statement was admitted into evidence as state's exhibit 7A, but was not read into the record.

On the basis of the evidence presented at the hearing, including the statement, the court found no probable cause to hold the defendant for the crime of murder.

chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

Subsequent to the court's finding, the defendant, because of the court's failure to find probable cause, made a motion to remove from the court's file certain documents presented as evidence during the hearing, including a warning of *Miranda* rights executed by the defendant, the statement and a memorandum of a secretary relating to the transcription of the statement. The court denied the defendant's motion and the defendant then moved to seal the documents. The court temporarily sealed the documents pending its decision on the defendant's motion.

The Norwich Bulletin, the publisher of a daily newspaper with a general circulation in New London County, was granted permission to intervene in this case for the sole purpose of objecting to the defendant's motions. The state indicated on the record that it had completed its investigation and that it took no position as to the release of the statement.

The issues presented in this case are of first impression: first, whether the public and the press have a first amendment right of access to probable cause hearings and to any document considered by the court during such hearings; and second, if so, whether the defendant's right of privacy outweighs the right of access where probable cause to hold the defendant has not been found.

No case could be found in Connecticut or in any other jurisdiction which considered the first amendment right of access to probable cause hearings.

In *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 391, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979), the Supreme Court held that the guarantee of the sixth and fourteenth amendments of a public trial provides no right for members of the public to attend criminal trials.

In *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 580–81, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980), the Supreme Court held that there is a guaranteed right of the public to attend criminal trials under the first and fourteenth amendments and, absent an overriding interest articulated in the trial court's findings, the trial of a criminal case must be open to the public. The decision was based primarily on two fundamental concerns: (1) the long, common law history of open criminal trials; and (2) the need for public scrutiny over the judicial decision-making process. *Richmond Newspapers, Inc.* v. *Virginia,* supra, 564, 571.

In *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 605–606, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982), the Supreme Court summarized the reasoning in the *Richmond* decision as follows:

"Two features of the criminal justice system, emphasized in the various opinions in *Richmond Newspapers,* together serve to explain why a right of access to *criminal trials* in particular is properly afforded protection by the First Amendment. First, the criminal trial historically has been open to the press and general public. . . .

"Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the intergrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government."

The United States Supreme Court recently held that the first amendment right of access extends to the voir dire of prospective jurors. *Press-Enterprise Co.* v. *Superior Court of California,* 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984).

Although the Supreme Court relied on each of its above cited first amendment opinions in its very recent decision in *Waller* v. *Georgia,* 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), holding that a defendant's sixth amendment right to a public trial extends to a pretrial suppression hearing, the Supreme Court has not specifically held that there is a right of access by the press and the public to pretrial proceedings under the first amendment. The majority of courts which have considered this question, however, have held that there is a qualified right of access to pretrial proceedings under the first amendment. *In re Herald Co.,* 734 F.2d 93 (2d Cir. 1984) (pretrial suppression hearing); *In re Globe Newspaper Co.,* 729 F.2d 47 (1st Cir. 1984) (pretrial bail proceedings); *United States* v. *Chagra,* 701 F.2d 354 (5th Cir. 1983) (pretrial bail reduction hearing); *United States* v. *Brooklier,* 685 F.2d 1162 (9th Cir. 1982) (pretrial suppression hearing and voir dire proceedings); *United States* v. *Criden,* 675 F.2d 550 (3d Cir. 1982) (pretrial suppression, due process and dismissal for entrapment hearing); contra, *San Jose Mercury-News* v. *Municipal Court,* 30 Cal. 3d 498, 179 Cal. Rptr. 772, 638 P.2d 655 (1982) (preliminary hearing).

Although the state Supreme Court has not addressed the question of access to pretrial proceedings in criminal cases, the Appellate Session has held that the standard set forth in the *Gannett* case is applicable to motions seeking closure of pretrial suppression hearings, i.e., "whether the moving party has sustained the burden of proving that 'a fair trial for the defendant is likely to be jeopardized by publicity' unless the court-

room is closed to the press and public." *State* v. *Couture,* 37 Conn. Sup. 705, 707, 435 A.2d 369 (App. Sess. 1981); see also *State* v. *Burak,* 37 Conn. Sup. 627, 630, 431 A.2d 1246 (App. Sess. 1981); *Cowles Publishing Co.* v. *Murphy,* 96 Wash. 2d 584, 588, 637 P.2d 966 (1981).

In addition to a judicial trend towards elevating the right of access to pretrial proceedings to a constitutional level, the Connecticut General Assembly has expressed its intent to open once secret proceedings to the scrutiny of the press and the public. On November 24, 1982, amendment XVII to the Connecticut constitution was approved which amended § 8 of article first of the constitution by eliminating the grand jury system for indicting those suspected of committing crimes punishable by death or life imprisonment and by substituting therefor a probable cause hearing. In accordance with the amendment the General Assembly adopted Public Acts 1983, No. 83-210, to establish the procedures for probable cause hearings. Although there is no explicit grant of public access to probable cause hearings, the legislative history of Public Acts 1983, No. 83-210, reveals a legislative intent to extend a right of access to them similar to that accorded to trials. This intent was clearly illustrated during a public hearing on the probable cause bill when the following discussion occurred between Representative Richard D. Tulisano, cochairman of the Judiciary Committee, and Austin J. McGuigan, chief state's attorney:

"Representative Tulisano: Don't you think it would be proper to put in the statute that these all be open hearings or don't you think they should be open? I don't think it says that.

"Mr. McGuigan: It doesn't address that. I don't—it could be a possible problem in some case, but I think

perhaps we should approach that on—I would think that some cases could present a problem.

"Representative Tulisano: The old hearing process was obviously open—

"Mr. McGuigan: —They're open, correct.

"Representative Tulisano: Can you think of instances where they should not be open to the public?

"Mr. McGuigan: Actually making them public could prejudice the rights of the defendant certainly and we could have a highly controversial matter. We could have a—

"Representative Tulisano: —the same kinds of situations for trials today in some instances, some rare instances, the courts do things—

"Mr. McGuigan: —I think the court should have the power if it really needed to close a hearing.

"Representative Tulisano: But basically they should be opened?

"Mr. McGuigan: I would think so, yes. I would expect that the majority of them would be opened."

Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, p. 960, March 18, 1983.

The legislative intent to open probable cause hearings in Connecticut on the same basis as trials reflects the increasing significance which the trend in the case law grants to public scrutiny over the judicial decision-making process. The decision in a probable cause hearing is of exceptional importance to the administration of justice, and openness will help assure the public that the decision is properly reached. See *In re Globe Newspaper Co.,* supra, 56.

This court, therefore, holds that the press and the public have a first amendment right of access to probable cause hearings and to documents considered by the court during such hearings.

The right of access by the press and the public to probable cause hearings must be weighed against a defendant's sixth amendment right to a fair trial or, in the absence of such a right, against any substantial threat which may exist to the interests of effective law enforcement, or individual privacy and safety. See *Cowles Publishing Co.* v. *Murphy,* supra. Since this court found no probable cause to indict the defendant for the crime of murder, the defendant's sixth amendment right to a fair trial is not implicated. The nature of the evidence which the intervenor seeks to obtain, however, combined with the finding of no probable cause, implicates the defendant's right to individual privacy.

The right to privacy involved in this case is not constitutional in dimension. Matters which fall within the constitutional right to privacy generally relate to activities such as marriage, procreation, contraception, family relationships and child rearing and education. *Paul* v. *Davis,* 424 U.S. 693, 713, 96 S. Ct. 1155, 47 L. Ed. 2d 405, reh. denied, 425 U.S. 985, 96 S. Ct. 2194, 48 L. Ed. 2d 811 (1976); *Roe* v. *Wade,* 410 U.S. 113, 152–53, 93 S. Ct. 705, 35 L. Ed. 2d 147, reh. denied, 410 U.S. 959, 93 S. Ct. 1409, 35 L. Ed. 2d 694 (1973). The constitutional right of privacy was distinguished from the common law right of privacy in *Reilly* v. *Leonard,* 459 F. Sup. 291, 299–300 (D. Conn. 1978), as follows: "It must be recognized, however, that the 'right to privacy' is a generic term which encompasses two entirely different interests. First, there is the right to be free from substantive regulation by the government in certain areas of one's life. Second, there is the right to be free from unwarranted and unwanted pub-

licity about one's affairs. It is only the first of these interests that is protected by the Constitution. The right to be free from unwanted publicity, which is the privacy interest implicated in the present suit, is protected, if at all, by the common law."

Connecticut has recently recognized the common law tort of invasion of privacy. *Goodrich* v. *Waterbury Republican-American, Inc.,* 188 Conn. 107, 127, 448 A.2d 1317 (1982); see also *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 591, 468 A.2d 933 (1983). While this common law action is more akin to defamation, it "represents an interference with the right . . . 'to be let alone.' " *Goodrich* v. *Waterbury Republican-American, Inc.,* supra, 127–28. In view of the finding of no probable cause the acquisition and publication of the information sought by the intervenor could give rise to an invasion of privacy action on behalf of the defendant. Regardless of the availability to the defendant of such an action, the privacy interest which is implicated here must weigh heavily in balancing the respective rights of the parties.

While Public Acts 1983, No. 83-210, creating the procedures for probable cause hearings makes no mention of the disposition of court records if a finding of no probable cause results, the General Assembly has expressed its desire to protect the privacy rights of persons found not guilty of a crime or who have had charges dismissed by mandating the erasure of criminal records. General Statutes § 54-142a. Similar treatment for those not indicted under the probable cause hearing system would be consistent with the erasure statute and would be in accord with the principle that the legislature is presumed to create a consistent body of law. *Heffernan* v. *Slapin,* 182 Conn. 40, 46, 438 A.2d 1 (1980).

After finding that the first amendment right of access extends to bail hearings and documents filed in support of the parties' arguments at those hearings, the First Circuit in *In re Globe Newspaper Co.,* supra, 59, placed great emphasis on the preliminary nature of the subject proceeding in weighing the parties' competing interests: "We believe, however, that the interests of the press and the public weigh less heavily at this early point in the proceedings than they do later, both because the tradition of openness in bail hearings is not as strong and because the press and public will have later opportunities to examine the material admitted at those hearings. By contrast, the privacy and fair trial interests of the defendants are at their zenith during the bail hearings, since they have not yet had an opportunity to test the material admitted at the hearings. We can scarcely imagine a stronger case for closure than the one now before us, in which the defendants are accused of participation in organized crime, the pretrial publicity is intense, and the material to which the press seeks access is extremely prejudicial. If these bail proceedings must be open to the public, it is difficult for us to conceive of circumstances in which a pretrial proceeding could be closed. We find that the magistrate and the district court were correct in concluding that closure and impoundment are necessary to protect defendants' privacy and fair trial rights until defendants have had a fair opportunity to challenge the legality of the . . . material."

In the present case, there is *no* tradition of openness in probable cause hearings relating to a murder charge; rather, there is a long history of secrecy in such proceedings in order to protect the privacy rights of persons subject to them. Moreover, even though the press will not have a later opportunity to examine the defendant's statement in connection with the murder charge, the defendant himself will not be given the opportu-

nity to challenge the voluntariness and admissibility of the statement in connection with such charge. In the present case, the defendant is accused of murder, a crime of much greater magnitude than participation in organized crime, the pretrial publicity in New London County has been extensive, and the defendant's statement to which the press seeks access is very prejudicial. Of overriding significance, however, is the fact that probable cause for the murder charge was not found in this case—a fact which alone creates a stronger case for protection of the defendant's right to privacy than the situation in *In re Globe Newspaper Co.*, in which the defendants had been indicted prior to the bail hearings during which the material in dispute was presented.

On the basis of the foregoing, the court finds that release of the defendant's statement would pose a substantial threat to his interests of individual privacy. The court further finds that the defendant's privacy right outweighs the intervenor's right of access to the statement and that the court is warranted under its inherent authority to control its records and proceedings to seal the statement.

For the reasons stated above, the defendant's motion to seal documents is granted as to the defendant's statement, exhibit 7A, and is denied as to the other documents temporarily sealed by the court.